[No. B224263. Second Dist., Div. Six. Nov. 14, 2011.]

SUSAN J. SALEHI, Plaintiff and Respondent, v.
SURFSIDE III CONDOMINIUM OWNERS ASSOCIATION, Defendant
and Appellant.

[No. B226400. Second Dist., Div. Six. Nov. 14, 2011.]

SUSAN J. SALEHI, Plaintiff and Appellant, v.
SURFSIDE III CONDOMINIUM OWNERS ASSOCIATION, Defendant
and Respondent.

**1150**

## Counsel

Proctor, Slaughter & Reagan, Slaughter & Reagan, William M. Slaughter and Gabriele M. Lashly for Defendant and Appellant and for Defendant and Respondent.

Susan J. Salehi, in pro. per., for Plaintiff and Respondent and for Plaintiff and Appellant.

## Opinion

**YEGAN, J.**—A party contemplating litigation to enforce the covenants, conditions, and restrictions (CC&R's) of a condominium project should get its "ducks in a row." That is to say, such party should be ready to go forward procedurally and prove its case substantively. Failure to do so subjects the losing party to an award of attorney fees. Here, a condominium owner, Susan J. Salehi, filed such a suit in propria persona against a condominium association (Association). In defending the suit, Association incurred attorney fees of a quarter million dollars. Based on faulty reasoning, Salehi dismissed eight of the 10 causes of action on the eve of trial. She prevailed on no level whatsoever, let alone on a "practical level." But the trial court denied Association any attorney fees, and Association appealed. We conclude that the denial was an abuse of discretion as a matter of law. Salehi did not realize her "litigation objectives" on these causes of action. Association did realize its "litigation objectives" and was the prevailing party on a "practical level." It is entitled to attorney fees as mandated by the Legislature. We express no opinion on the amount of attorney fees that should be awarded on remand.

Salehi has filed her own appeal, which we conclude to be without merit. Accordingly, we reverse the order denying attorney fees and affirm in all other respects.

### ASSOCIATION'S APPEAL

#### *Factual and Procedural Background*

In March 2004 Salehi, a licensed California attorney, purchased a condominium unit in Surfside III (Surfside), "a 309[-unit] condominium/townhome community in 8 buildings covering 15 acres adjacent to the ocean in Port Hueneme." The community is governed by the CC&R's, which provide that Association "shall have the duty of maintaining, operating and managing the Common Area of the project."

In May 2008 Salehi, in propria persona, filed a complaint against Association. The operative pleading alleges 10 causes of action. The gravamen of the complaint is that, in violation of the CC&R's, Association failed to "appropriately maintain and repair Surfside" and to "maintain an adequate reserve fund for the replacement of the common area facilities."

The fourth and sixth causes of action alleged negligent misrepresentation and fraud. These two causes of action were based on Association's alleged failure to disclose Surfside's physical and financial problems to Salehi before she purchased her condominium unit.

Salehi represented Paul Lewow in a similar Ventura County lawsuit against Association (*Lewow v. Surfside III Condominium Owners Assn.* (Super. Ct. Ventura County, 2010, No. 56-2008-00313595-CU-BC-VTA)). Like Salehi, Lewow had also purchased a condominium unit in Surfside. This matter was tried to the court, which issued a statement of decision on January 8, 2010. The trial court concluded that Lewow had failed to prove his case. Judgment was subsequently entered for Association.

Trial in the instant case was scheduled to begin on January 11, 2010, three days after the issuance of the statement of decision in the Lewow case. On January 4, 2010, Salehi informed Association's counsel that Mark Rudolph, her expert on construction and building maintenance, had notified her that he had "a serious heart condition which will require surgery to repair." Because Rudolph's medical condition rendered him unavailable for trial, Salehi told counsel that she had "decided to dismiss all but the fraud and negligent misrepresentation causes of action without prejudice." On January 8, 2010, the same day that the statement of decision was issued in the Lewow case, Salehi filed a request to dismiss without prejudice all of the causes of action except the fourth and sixth for negligent misrepresentation and fraud. The court clerk entered the dismissals as requested by Salehi.

On January 11, 2010, Salehi successfully moved to continue the trial on the remaining fourth and sixth causes of action because of Rudolph's unavailability. She submitted Rudolph's declaration and a medical report verifying his heart problems. According to Rudolph, on January 4, 2010, he informed Salehi "of the severity of [his] health condition." Rudolph further declared: "I have very little energy and have been advised to avoid stress, curtail my activities as much as possible, and get as much rest as possible. [¶] . . . I am not able to participate in the trial at this time. I expect that the surgery will be sometime this month and . . . expect between six to eight weeks to recover." The trial was continued to May 10, 2010.

In February 2010, Association moved to recover its attorney fees of $252,767 incurred in defending against the eight causes of action that Salehi

had voluntarily dismissed. The motion was made pursuant to Civil Code section 1354 (section 1354), subdivision (c), which provides: "In an action to enforce the governing documents" of a common interest development, "the prevailing party shall be awarded reasonable attorney's fees and costs." Association claimed that the adverse decision in the Lewow case had motivated Salehi to request the dismissals: "Salehi must have realized that she would lose at her trial as well. In order to cut her losses, Salehi voluntarily dismissed" all of the causes of action except those for negligent misrepresentation and fraud.

In her declaration in opposition to the motion, Salehi explained that she had requested to dismiss only those causes of action as to which Rudolph was an essential witness because she believed that the trial court would not grant a continuance. Since the causes of action would be dismissed without prejudice, she could refile them later after Rudolph had recovered from surgery. At that time, Salehi believed that she would be able to proceed without Rudolph on the remaining negligent misrepresentation and fraud causes of action since they did not concern specific construction problems.

In a minute order, the trial court denied the motion for attorney fees. The court stated that, in rendering its decision, it had been guided by *Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568 [26 Cal.Rptr.2d 758] (*Heather Farms*). Based on *Heather Farms*, the court determined that Association was not a "prevailing party" for purposes of attorney fees within the meaning of section 1354 because it had not "prevailed on a practical level." The court rejected Association's claim "that the dismissal[s] [were] motivated by the adverse decision in the related" Lewow case. The court concluded: "In the final analysis, . . . the dismissal[s] seem[] to be due more to [Salehi's] inexperience and poor decisions than any implied concession to the merits of [Association's] case."

### Association Is the Prevailing Party

■ Section 1354 does not define "prevailing party." It only provides that "the prevailing party shall be awarded reasonable attorney's fees and costs." (*Id.*, subd. (c).) "The words 'shall be [awarded]' reflect a legislative intent that [the prevailing party] receive attorney fees *as a matter of right* (and that the trial court is therefore *obligated* to award attorney fees) whenever the statutory conditions have been satisfied." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 872 [39 Cal.Rptr.2d 824, 891 P.2d 804].)

Association contends that, pursuant to Code of Civil Procedure section 1032 (section 1032), it was entitled to attorney fees as "costs." Association relies on two subdivisions of section 1032. Subdivision (b) of section 1032

provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Subdivision (a)(4) of section 1032 provides: " 'Prevailing party' includes . . . a defendant in whose favor a dismissal is entered . . . ."

■ "[T]he premise for [Association's] argument, that a litigant who prevails under the cost statute is necessarily the prevailing party for purposes of attorney fees, has been uniformly rejected by the courts of this state. [Citation.] Furthermore, . . . section 1032, subdivision (a) only defines ' "[p]revailing party" ' as the term is used 'in [that] section.' It does not purport to define the term for purposes of other statutes." (*Heather Farms, supra*, 21 Cal.App.4th at p. 1572; accord, *Galan v. Wolfriver Holding Corp.* (2000) 80 Cal.App.4th 1124, 1128–1129 [96 Cal.Rptr.2d 112] [definition of "prevailing party" in § 1032 inapplicable to Civ. Code, § 1942.4, subd. (b)(2), which awards attorney fees to "prevailing party" in action for damages resulting from landlord's collection of rent for substandard housing]; *Gilbert v. National Enquirer, Inc.* (1997) 55 Cal.App.4th 1273, 1276–1277 [64 Cal.Rptr.2d 659] [§ 1032 definition inapplicable to Civ. Code, § 3344, subd. (a), which awards attorney fees to "prevailing party" in action for unauthorized use of another's name, voice, signature, photograph, or likeness].)

In denying Association's motion for attorney fees, the trial court relied on *Heather Farms, supra*, 21 Cal.App.4th 1568. There, a homeowners association brought an action against a homeowner, Robinson, to enforce the CC&R's of a residential development. The complaint "spawned a complex series of cross-complaints and subsidiary actions" involving numerous parties. (*Id.*, at p. 1570.) After years of litigation, all of the parties except Robinson signed a settlement agreement. "[T]he settlement nonetheless required the association to dismiss its suit against Robinson 'without prejudice.' " (*Ibid.*) The judge who negotiated the settlement found that there were no prevailing parties: " 'This dismissal is part of an overall complex piece of litigation . . . that's been resolved by a negotiated settlement. There are no winners. There are no favorable parties in this case.' " (*Id.*, at p. 1571.) Robinson subsequently moved to recover his attorney fees pursuant to section 1354. Robinson "maintained that since he had received a dismissal, he was the 'prevailing party' . . . ." (21 Cal.App.4th at p. 1571.) The trial "court agreed with the settlement judge and concluded there was no 'prevailing party' . . . within the meaning of section 1354." (*Ibid.*)

■ The appellate court upheld the trial court's ruling. It concluded that, in determining who is the "prevailing party" within the meaning of section 1354, the trial court should analyze "which party . . . prevailed on a practical level." (*Heather Farms, supra*, 21 Cal.App.4th at p. 1574.) Applying this

analysis, the appellate court reasoned that there was no prevailing party because the homeowners association had dismissed its action against Robinson "as part of a global settlement agreement, not because he succeeded on some procedural issue or otherwise received what he wanted." (*Ibid.*)

■ In *Santisas v. Goodin* (1998) 17 Cal.4th 599 [71 Cal.Rptr.2d 830, 951 P.2d 399], our Supreme Court implicitly applied the *Heather Farms* rationale to the award of contractual attorney fees: "[A]ttorney fees should not be awarded *automatically* to parties in whose favor a voluntary dismissal has been entered. In particular, it seems inaccurate to characterize the defendant as the 'prevailing party' if the plaintiff dismissed the action only after obtaining, by means of settlement or otherwise, all or most of the requested relief, or if the plaintiff dismissed for reasons, such as the defendant's insolvency, that have nothing to do with the probability of success on the merits. . . . If . . . the contract allows the prevailing party to recover attorney fees but does not define 'prevailing party' or expressly either authorize or bar recovery of attorney fees in the event an action is dismissed, a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise. [Citation.]" (*Santisas v. Goodin, supra*, 17 Cal.4th at pp. 621–622.)

Here, the trial court determined that Association was not the prevailing party for purposes of attorney fees. We review the trial court's decision for abuse of discretion. (*Heather Farms, supra*, 21 Cal.App.4th at p. 1574.) " '[D]iscretion is abused whenever . . . the court exceeds the bounds of reason, all of the circumstances before it being considered.' [Citation.]" (*State Farm etc. Ins. Co. v. Superior Court* (1956) 47 Cal.2d 428, 432 [304 P.2d 13].) "In deciding whether the trial court abused its discretion, '[w]e are . . . bound . . . by the substantial evidence rule. [Citations.] . . . The judgment of the trial court is presumed correct; all intendments and presumptions are indulged to support the judgment; conflicts in the declarations must be resolved in favor of the prevailing party, and the trial court's resolution of any factual disputes arising from the evidence is conclusive. [Citations.]' [Citation.] We presume the court found in [Salehi's] favor on all disputed factual issues. [Citation.]" (*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.* (1999) 69 Cal.App.4th 1399, 1403 [82 Cal.Rptr.2d 326].)

Thus, we presume that the trial court credited Salehi's proffered reasons for dismissing without prejudice all of the causes of action except the fourth and sixth. According to Salehi, she requested the dismissals not because Association had prevailed in the Lewow case, but because her construction and building maintenance expert was unavailable. She intended to refile the dismissed causes of action after the expert had recovered from surgery. She

did not dismiss the two causes of action for negligent misrepresentation and fraud because she believed that her expert would not be a necessary witness on those causes of action. Later, when a more experienced attorney advised her that the expert might be necessary for rebuttal, she decided to move for a continuance on the remaining causes of action. We are bound by the trial court's acceptance of Salehi's explanation for the dismissals. (See, e.g., *In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099 [125 Cal.Rptr.3d 238].) But that does not mean that Salehi prevails on Association's appeal.

■ We must conclude that the trial court abused its discretion as to who was the prevailing party. Its ruling exceeds the "bounds of reason." We are hard pressed to explain how it reached its conclusion or how the holding of *Heather Farms* aids Salehi. The record does not suggest that Salehi would have prevailed on the merits. It does not appear that she was ready to go forward procedurally and prove the case substantively. To say that she was, somehow, the prevailing party on a "practical level" or that she realized her "litigation objectives" is to do violence to these legal phrases of art. Association was ready to defend on the merits and cannot be faulted because Salehi dismissed these causes of action. ·

*Heather Farms* is readily distinguishable. There, the dismissal was mandated by the terms of a global settlement. Here, the dismissals were based on Salehi's faulty reasoning. The expert's unavailability because of illness constituted good cause for a continuance. Salehi recognized that she had good cause for a continuance when, three days after the dismissals, she requested a continuance on the remaining fourth and sixth causes of action because of the expert's illness. The trial court confirmed the showing of good cause by continuing the trial for four months to May 10, 2010.

When Salehi filed her request for dismissals on January 8, 2010, she should have known that her expert's unavailability would constitute good cause for a continuance. The trial court would have abused its discretion had it denied a continuance in these circumstances. The expert was an essential witness, and Salehi had learned of his illness only seven days before the trial date. Rule 3.1332(c)(1) of the California Rules of Court provides: "Circumstances that may indicate good cause [for a continuance of the trial] include: [¶] . . . The unavailability of an essential lay or expert witness because of death, illness, or other excusable circumstances . . . ."

Instead of moving for a continuance on all of the causes of action, as a competent attorney would have done, Salehi dismissed eight of them. These dismissals were unnecessary because she was entitled to a continuance. The trial court would have abused its discretion had it denied a continuance in these circumstances.

■ "In assessing litigation success, *Hsu v. Abbara*[, *supra*,] 9 Cal.4th 863, 877 . . . instructs: '[C]ourts should respect substance rather than form, and to this extent should be guided by "equitable considerations." ' " (*Castro v. Superior Court* (2004) 116 Cal.App.4th 1010, 1019 [10 Cal.Rptr.3d 865].) Even though Salehi's dismissals were based on reasons unrelated to "the probability of success on the merits" (*Santisas v. Goodin, supra*, 17 Cal.4th at p. 621), it is unfair to deprive Association of its reasonable attorney fees. Because of Salehi's dismissals, Association "realized its litigation objectives." (*Id.*, at p. 622.) The dismissals were due to Salehi's faulty reasoning. To shield her from attorney fees liability would reward what the trial court characterized as her "poor decisions." ■ She should not be able to take advantage of her own fault or wrong. (Civ. Code, § 3517.)

We make one further observation. At no time has Salehi claimed that the trial court should have awaited outcome of the two remaining causes of action before deciding who was the prevailing party "[i]n [the] action." (§ 1354, subd. (c).) We only point out that prudence may dictate that the trial court postpone ruling on an attorney fees request until all causes of action have been resolved.

## SALEHI'S APPEAL

### *Factual and Procedural Background*

Almost four years before the 2008 filing of the instant action (the 2008 action), Salehi filed a separate action (the 2004 action) against Association alleging five causes of action: nuisance, breach of contract, breach of fiduciary duty, negligence, and declaratory relief (*Salehi v. Surfside III Condominium Owners* (Super. Ct. Ventura County, 2006, No. CIV229468)). The gravamen of the 2004 action was that, in violation of the CC&R's, Association had failed to maintain and repair the common area water pipes above Salehi's unit. As a result of this failure, water had leaked from the pipes into her unit. The leaks had damaged Salehi's property and had caused the growth of toxic mold. The 2004 complaint alleged that, before Salehi purchased her unit, Association had been "notified of incidents of common area water leakage, and other common area water intrusion in [Salehi's] unit, and into other units, in the Surfside III complex."

In August 2005 the parties signed a "Settlement Agreement and Mutual Release" that disposed of the 2004 action. Association agreed to pay Salehi $110,000. The parties agreed to release each other from all claims "which they ever had, may now have or may hereafter have . . . by reason of any act or omission, matter, cause or thing arising out of or connected with the Complaint, or which could have been alleged in the Complaint, including

without limitation, any representation, misrepresentation or omission in connection with any of the above . . . ."

The agreement included an express waiver of the protection afforded by Civil Code section 1542 (section 1542), which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." The agreement set forth section 1542 verbatim and provided: "It is the intention of the Parties hereto that the foregoing general releases shall be effective as a bar to all actions, causes of action, suits, claims or demands of every kind, nature or character whatsoever, *known or unknown*, suspected or unsuspected, fixed or contingent, referred to above, except those reserved in this Agreement." (Italics added.) "[T]he parties hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims and facts in addition to or different from those which they now . . . believe to exist with respect to the subject matter of or any part to this release, but that it is nonetheless the intention of the Parties to hereby fully, finally, and forever settle and release any and all disputes and differences, *known or unknown*, suspected or unsuspected, as to the released matters." (Italics added.) Thus, in 2005, Association "bought peace" with Salehi for any theoretical claims she may have had.

The 2008 action was filed almost three years after the signing of the Settlement Agreement and Mutual Release. At the time of trial of Salehi's two remaining causes of action for negligent misrepresentation and fraud, Association made a pretrial motion in limine to exclude "all evidence of the fraud and misrepresentation which occurred prior to the signing [of] the release" in August 2005. Association contended that Salehi "cannot pursue any claims for damages which occurred before August . . . 2005, because she released all known and unknown claims against Association in the Settlement Agreement and Mutual Release." The granting of the motion in limine would dispose of Salehi's two remaining causes of action, since they were based on Association's alleged failure to disclose Surfside's physical and financial problems to Salehi before she purchased her unit in March 2004.

Salehi argued that the release applied only to known and unknown claims related to the common area plumbing leaks that had damaged her individual condominium unit. Salehi declared that, when she signed the release in August 2005, she "did not, and could not know that there was a complex-wide failure of the plumbing system and essentially every other major component of the common areas." In her complaint in the 2008 action, Salehi alleged that Association had failed "to maintain, upkeep, and adequately repair the common areas, including but not limited to the drainage and

sewage systems, the fresh water plumbing, the security gates, the roofs, the building exteriors and stairways, the elevators, the carports, the utility buildings, the subflooring, . . . railings, balconies, patios, sidewalks, asphalt roadways, [and] lighting . . . ."

The trial court granted the motion in limine and entered judgment in favor of Association. Association filed a memorandum of costs in the amount of $7,056. The trial court denied Salehi's motion to tax costs.

### Nonpreclusive Effect of Order Denying Summary Adjudication of Issues

Before Association's motion in limine, a different judge had denied its motion for summary adjudication on the issue of whether the 2005 release barred Salehi's claims in the 2008 action. Salehi argues that, by granting the motion in limine, the trial court in effect reversed this earlier ruling without complying with Code of Civil Procedure section 1008, which limits a court's jurisdiction to grant an application to reconsider its prior order.

Salehi "has cited no case, and we know of none, suggesting that section 1008 bars the judge to whom a case is assigned for trial from ruling on an issue of law as to which another judge has previously *denied* summary adjudication. To read the statute that broadly would be a prescription for calcified and pointless trial proceedings grinding inexorably toward reversal on appeal for errors that could easily have been corrected but for a perceived lack of power to do so." (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 766 [69 Cal.Rptr.3d 365].) "The nonpreclusive effect of denial is explicitly recognized in the directive that a grant of summary adjudication as to some issues 'shall not operate to bar' relitigation of other issues 'as to which summary adjudication was either not sought or denied.' (Code Civ. Proc., § 437c, subd. (n)(2).)" (*Id.*, at p. 766, fn. 18.)

### Evidence on the Issue of Claimed Ambiguity of the 2005 Settlement Agreement

Salehi contends that the trial court erroneously "refused to allow [her] to present evidence concerning [her] intent in entering into the [2005] agreement." We disagree. In support of her contention, Salehi cites a page of the reporter's transcript of the hearing on the motion in limine. But this citation does not support her contention. At this page of the reporter's transcript, Salehi asked the court to "find that [the 2005 release] is ambiguous and accept extrinsic evidence." The court replied that it "could take evidence on the issue as to whether or not it's ambiguous." Salehi responded: "The

evidence is what I've cited in the opposing papers, that the language that is in the recitals limits it. It explains, it shows the intent of why I signed the settlement agreement."

█ The trial court properly permitted Salehi to present extrinsic evidence as to whether the 2005 agreement was ambiguous. "[P]arol evidence is properly admitted to construe a written instrument when its language is ambiguous. . . . [¶] The decision whether to admit parol evidence involves a two-step process. First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract. [Citation.]" (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554].)

█ Although Salehi told the court that her opposition to the motion in limine contained the relevant extrinsic evidence concerning her intent, it in fact contained no competent extrinsic evidence. Salehi declared, "I never intended to settle any claims other than for the specific repairs stated in the settlement agreement . . . ." Salehi did not indicate whether she had communicated this intent to Association. "[E]vidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language." (*Winet v. Price, supra*, 4 Cal.App.4th at p. 1166, fn. 3.) "It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce. [Citation.]" (*Id.*, at p. 1166.)

### 2005 Settlement Bars 2008 Claims

█ Salehi asserts that the trial court should have let the jury determine whether the parties intended the 2005 release to encompass her claims in the 2008 action for negligent misrepresentation and fraud. Because there was no conflicting competent extrinsic evidence as to the parties' intent, the interpretation of the release was a question of law for the court, not a question of fact for the jury. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 [75 Cal.Rptr.3d 333, 181 P.3d 142]; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].)

We "independently construe the writing to determine whether the release encompasses the present claim[s]" for negligent misrepresentation and fraud. (*Winet v. Price, supra*, 4 Cal.App.4th at p. 1166.) We conclude that the 2005 release bars the remaining two 2008 claims.

In *Winet v. Price, supra*, 4 Cal.App.4th 1159, the appellate court interpreted a release with similar language. Price was an attorney who performed services for Winet. Price sued Winet to recover legal fees, and the parties settled the matter. As part of the settlement, the parties released each other from all claims, whether known or unknown. Each party was represented by counsel during the negotiation of the release. Fifteen years later, Winet was sued concerning a partnership agreement that Price had drafted before the settlement agreement was signed. Winet cross-complained against Price, alleging that Price had committed malpractice in drafting the partnership agreement. Price moved for summary judgment, arguing that the release encompassed the malpractice claim. The trial court granted the motion.

 The appellate court upheld the trial court's ruling. In determining "that the release was designed to extinguish all claims extant among the parties," whether known or unknown, the appellate court considered the following factors: "First, Winet was represented by counsel and was aware at the time he entered into the release of possible malpractice claims against Price relating to certain services Price had rendered to him [(but not relating to the drafting of the partnership agreement)]. With this knowledge and the advice of counsel concerning the language of (and the import of waiving) section 1542, Winet expressly assumed the risk of unknown claims. Second, it is significant that the parties were able to, and did, fashion language memorializing their agreement to preserve identified claims from the operation of the release when such was their intention . . . . Finally, Winet was represented by his own counsel, who explained to Winet the import of the release in general and of the waiver of section 1542 in particular. Under these circumstances we may not give credence to a claim that a party did not intend clear and direct language to be effective. [Citation.]" (*Winet v. Price, supra*, 4 Cal.App.4th at p. 1168, fn. omitted.)

The rule and rationale of *Winet* apply here. Like Winet, Salehi was also represented by counsel during the negotiation of the release. In the absence of evidence to the contrary, we presume that counsel explained to Salehi "the import of the release in general and of the waiver of section 1542 in particular." (*Winet v. Price, supra*, 4 Cal.App.4th at p. 1168.) The settlement agreement states: "THE PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY LEGAL COUNSEL AND ARE FAMILIAR WITH THE PROVISIONS OF CALIFORNIA *CIVIL CODE* § 1542 . . . ." Moreover, because Salehi was an attorney in her own right, she should have understood the import of the section 1542 waiver.

When Salehi signed the release in August 2005, she was aware of possible claims against Association in addition to the water leakage claims pertaining to her own unit. In a letter to Association months before the signing of the

release, Salehi stated that Dura-Flo, a plumbing contractor, had estimated it would cost "over $1.2 million to line all of the copper pipes only." Salehi inquired, "Which is correct: We have few plumbing problems or we have such extensive problems that we need a $1.2 million fix?" Salehi asked Association to "provide details to support [its] response including any inspection or estimate to repair the drains." So, Salehi knew, or should have known, of additional theoretical claims. Despite this knowledge, she "expressly assumed the risk of unknown claims." (*Winet v. Prince, supra,* 4 Cal.App.4th at p. 1168.)

Finally, "it is significant that the parties were able to, and did, fashion language memorializing their agreement to preserve identified claims from the operation of the release when such was their intention . . . ." (*Winet v. Price, supra,* 4 Cal.App.4th at p. 1168.) For example, the release expressly did not apply to Salehi's "obligation to pay Homeowner Association dues and assessments" or to "any obligations or restraining orders created by virtue of Ventura County Superior Court Case Number CIV229468 [(the 2004 action)]."

Accordingly, we reject Salehi's argument that the 2005 release did not apply to unknown claims against Association that arose prior to the release. "If an argument such as this were given currency, a release could never effectively encompass unknown claims. A releasor would simply argue that a release of unknown or unsuspected claims applied only to known or suspected claims, making it ineffective as to unknown or unsuspected claims." (*Winet v. Price, supra,* 4 Cal.App.4th at p. 1167.)

### Denial of Motion to Tax Costs

Salehi contends that the trial court abused its discretion in denying her motion to tax costs because "the costs which [she] sought to have taxed were incurred in defending the dismissed causes of action and were not reasonable or necessary for trial of the two remaining causes of action." Salehi's contention is without merit. Association sought costs pursuant to the costs statute, section 1032. Association was entitled to costs on the dismissed causes of action pursuant to subdivision (a)(4) of section 1032, which provides, " 'Prevailing party' includes . . . a defendant in whose favor a dismissal is entered . . . ."

Moreover, Salehi has forfeited the contention that costs "were not reasonable or necessary" as to the two remaining causes of action because she failed to provide supporting legal argument with references to the record. "[T]he trial court's judgment is presumed to be correct, and the appellant has the burden to prove otherwise by presenting legal authority on each point

made and factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited. [Citations.]" *(Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656 [117 Cal.Rptr.3d 207].) "The appellant may not simply incorporate by reference arguments made in papers filed in the trial court, rather than briefing them on appeal. [Citation.]" *(Id.,* at p. 656.)

### CONCLUSION

The order denying Association's motion for attorney fees is reversed, and the matter is remanded to the trial court for determination and award of reasonable attorney fees to Association. The judgment as to causes of action four and six and the postjudgment order denying Salehi's motion to tax costs are affirmed. Association shall recover its costs on both appeals.

Gilbert, P. J., and Perren, J., concurred.

The petition of respondent Susan J. Salehi for review by the Supreme Court was denied February 22, 2012, S198939.