Filed 11/27/13  Bates v. Kors CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KEN BATES et al., | D063123 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2010-00104827-CU-FR-CTL) |
| NANCY HURWITZ KORS et al., | |
| Defendants and Respondents. | |

APPEAL from a postjudgment order of the Superior Court of San Diego County, Lorna A. Alksne, Judge.  Affirmed.

The Coopersmith Law Firm, Steven T. Coopersmith and Alanna Whittington for Plaintiffs and Appellants.

Thomas A. Trapani; Manning & Kass, Elrod, Ramirez, Trester, Fidelity National Law Group and Scott D. Long for Defendants and Respondents.

Plaintiffs Ken Bates and his wife Karen Bates[1] (together the Bateses) appeal a postjudgment order granting a motion for statutory attorney fees brought by defendants Nancy Hurwitz Kors, Ph.D., who is a registered adoption facilitator, and her limited liability company ANAFS, LLC (together the Kors defendants). This matter arose after the Bateses decided to pursue adoption of a baby, entered into an adoption facilitation agreement (hereafter the agreement) with the Kors defendants, and then brought suit against the Kors defendants and the birthparents, Andrea and Cory Lee[2] (together the Lees, who are not parties to this appeal), after Andrea allegedly canceled the adoption before the twins she was carrying were born. The Bateses filed their complaint in the superior court despite provisions in the agreement requiring that any dispute or claim between the Bateses and the Kors defendants arising out of the agreement first be mediated or arbitrated.

The Bateses and the Lees eventually entered into a settlement agreement, and the court thereafter granted the Kors defendants' petition to compel arbitration, which the Bateses did not oppose. At about the same time, the Bateses began pursuing a claim against the statutory surety bond the Kors defendants had posted. The Bateses later voluntarily dismissed without prejudice their complaint against the Kors defendants and continued pursuing their claim against the surety bond.

---

[1] As Ken and Karen Bates share the same last name, we shall refer to them by their first names in the interest of convenience and clarity only. We intend no disrespect.

[2] As Andrea and Cory Lee share the same last name, we shall refer to them by their first names in the interest of convenience and clarity only. We intend no disrespect.

The Kors defendants thereafter brought the subject motion for reasonable attorney fees under Family Code[3] section 8638, subdivision (c) (hereafter section 8638(c)), arguing they were the prevailing parties.  Finding the Kors defendants were the prevailing parties, the court granted the motion and awarded them attorney fees in the amount of $14,760.

The Bateses contend that even though they voluntarily dismissed their complaint without prejudice, there was no prevailing party in this matter and, thus, the court abused its discretion when it determined the Kors defendants were the prevailing parties.  We conclude the court did not abuse its discretion.  Accordingly, we affirm the postjudgment order.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Factual Background*[4]

After the Bateses decided to pursue adoption of a baby, they were referred to Dr. Kors's website from which they learned about a birthmother (whom they later learned was Andrea) who was pregnant with twins and was looking for an adoptive couple.  The Bateses contacted Dr. Kors and eventually entered into the subject agreement with the Kors defendants and paid them $14,950 for their services in matching the Bateses with Andrea.  After the Bateses paid Andrea over $8,000 in birthmother expenses and incurred

---

[3]    Undesignated statutory references will be to the Family Code unless otherwise specified.

[4]    As the factual background is of marginal relevance to the attorney fees issue the Bateses raise on appeal, our summary is brief.

almost $1,300 in claimed adoption-related travel expenses, Andrea allegedly canceled the adoption.

1. *The agreement*

As pertinent here, the agreement stated that Dr. Kors's limited liability company was not a licensed adoption agency, Dr. Kors's office did not place children for adoption, and the birthmothers with whom Dr. Kors's clients were matched placed their own children for adoption. The agreement provided that the Bateses acknowledged a possible conflict of interest may exist when a facilitator works with both the adoptive parents and the birthparents in an independent adoption; that Dr. Kors was not an attorney, she did not provide legal services or advice, and they were advised by Dr. Kors to seek independent legal counsel; that Dr. Kors had a Ph.D. in clinical psychology, she was not a medical doctor, and she was not able to diagnose a pregnancy or monitor the pregnancy of the birthmother; and that the Bateses might be responsible for the birthmother's expenses and transportation costs during the screening process.

a. *Mediation and arbitration provisions*

Of particular importance here, paragraph 12 of the agreement provided that the parties agreed that any dispute or claim arising out the agreement or any resulting adoption facilitation services would be mediated before an independent mediator with JAMS/Endispute in Walnut Creek, California, before the parties resorted to arbitration.[5]

---

5    Paragraph 12 ("Mediation of Disputes") of the agreement, which the Bateses initialed, provided: "Parties agree to mediate any dispute or claim that may arise out of this Agreement or any resulting adoption facilitation service before resorting to

4

Paragraph 13 ("Arbitration of Disputes") of the agreement provided that all disputes or claims not settled by mediation, including but not limited to claims of breach of duty, "shall be" resolved by submission of the dispute to binding arbitration before a retired judge at the Walnut Creek, California offices of JAMS/Endispute.[6]

B. *Procedural Background*

1. *Complaint*

In November 2010, alleging various causes of action, the Bateses brought suit against both the Kors defendants and the Lees despite the provisions in the agreement requiring that any dispute or claim between the Bateses and the Kors defendants first be

arbitration. Such mediation shall be conducted before an independent mediator with and under the rules of JAMS/Endispute in Walnut Creek, California. Mediation is a process in which parties attempt to resolve a dispute by submitting it to an impartial, neutral mediator who is authorized to facilitate the resolution of the dispute but who is not empowered to impose a settlement on the parties. Mediation fees, if any, shall be divided equally."

[6] Paragraph 13, which the Bateses also initialed, provided: "All disputes between parties arising under this Agreement or arising out of the relationship between adoptive parents and Dr. Kors or her staff, including, including but not limited to claims of malpractice or breach of duty, which is [*sic*] not settled by mediation shall be resolved by submission to binding arbitration before a retired judge at the Walnut Creek, California offices of JAMS/Endispute. Any award of the arbitrator shall be final and binding. The parties shall agree on a retired judge from the JAMS panel. [¶] By initialing the space below adoptive parents and Dr. Kors and her staff are agreeing to have any dispute arising out of the matters included in the "Arbitration of Disputes" provision decided by neutral arbitration as provided by California law and *you are giving up any rights you might possess to have the dispute litigated in a court or jury trial.* By initialing in the space below you are giving up your judicial rights to discovery and appeal, unless those rights are specifically included in the "Arbitration of Disputes" provision. *If you refuse to submit to arbitration after agreeing to this provision, you may be compelled to arbitrate* under the authority of the California Code of Civil Procedure. Your agreement to the arbitration provision is voluntary." (Italics added.)

mediated or arbitrated. Of particular importance here, the Bateses asserted a claim against the Kors defendants for breach of the agreement, as well as a cause of action alleging the Kors defendants violated section 8628[7] by (1) "misrepresent[ing] the origin of the twins and the true identity of their biological father"; (2) failing to disclose Dr. Kors's previous six-year relationship with the Lees; (3) failing to disclose Andrea's medical history with premature deliveries and miscarriages; and (4) misrepresenting the estimated costs associated with the adoption of the twins.[8] On information and belief, the Bateses alleged "the twins were born premature at [29] weeks in September 2010," they were "both required to spend several months in the NICU [neo-natal intensive care]," and the Lees decided to keep them.

In their prayer for relief for the alleged violations of section 8628, the Bateses sought (1) "an award of treble the amount of their actual damages" under section 8638, subdivision (b); (2) a civil penalty under section 8633 "equal to the contract fees" they

---

[7] Section 8628 provides: "An adoption facilitator shall report in writing to the prospective adoptive parents all information that is provided to the facilitator by the birthparents concerning a particular child."

[8] In her declaration in opposition to the Kors defendants' motion for attorney fees, Karen later asserted Dr. Kors intentionally withheld the following information from her and Ken: (1) Dr. Kors had a six-year history of "tumultuous dealings" with Andrea; (2) Dr. Kors facilitated the failed adoption of the Lees' fourth child in 2008; (3) Andrea had a "long medical history with [specified conditions] which led to four premature births, extensive Neo-Natal Intensive Care ('NICU') time for five of her children, and three dead babies"; (4) "[t]here was a high likelihood that the twins which were to be the subject of the adoption would also be born premature and would require extensive NICU treatment"; and (5) the Bateses would be financially responsible for the "exhorbitant" costs of the twins' NICU care after birth.

paid to the Kors defendants in the amount of $14,950; and (3) an award of reasonable attorney fees and costs under section 8638(c).

2. *Petition to compel arbitration, settlement with the Lees, surety bond claim*

In early 2011 the Kors defendants filed a petition to compel arbitration based upon the arbitration provision in the agreement. After the parties stipulated to a continuance of the petition hearing date, the Bateses and the Lees entered into a confidential settlement agreement and mutual general release.

In August of that year, the court granted the Kors defendants' petition to compel arbitration, which the Bateses did not oppose, and the Bateses began pursuing a claim against a $25,000 statutorily mandated surety bond the Kors defendants had posted. They did not arbitrate their claims.

3. *Bateses' voluntary dismissal of their claims against the Kors defendants*

About six months later, in early 2012, the Bateses voluntarily dismissed without prejudice their complaint against the Kors defendants. The Bateses continued pursuing their claim against the surety bond posted by the Kors defendants. In demand letters sent to the corporate surety, the Bateses' counsel asserted that, as a result of their dealings with the Kors defendants, the Bateses had suffered out-of-pocket damages in the amount of $14,950 for the adoption facilitation fee; $8,219 in birthmother expenses they paid to Andrea; $1,290 in travel expenses to meet Andrea; plus "significant" attorney fees.

4. *The Kors defendants' motion for statutory attorney fees*

Thereafter, the Kors defendants brought their motion for reasonable statutory attorney fees under section 8638(c), arguing they were the prevailing parties.

7

Specifically, they asserted, "Now that the case has been dismissed, there is no question but that [they] are the prevailing parties" on the Bateses' section 8628 claims. In support of their motion, the Kors defendants submitted the declaration of their counsel, who stated that his clients had brought their petition to compel arbitration in order to enforce the agreement, his office had spent 65.6 hours of attorney time at the negotiated rate of $225 her hour defending them against the Bateses "claims and this lawsuit", and the Kors defendants had incurred $14,760 in attorney fees.

The Bateses opposed the motion, asserting the Kors defendants should not be considered the prevailing party within the meaning of section 8638(c) because they (the Bateses) "obtained significant relief from their lawsuit" and dismissed their lawsuit against the Kors defendants "for reasons unrelated to the merits." Specifically, they asserted they recovered significant relief in that "they obtained a settlement from the Lees and an 18-page Declaration from [Andrea], providing the very facts and details that [they] sought to obtain through this litigation." They also asserted that "[o]nly *after* settling with the Lees did [they] make the determination that they had obtained sufficient relief from the lawsuit, and that pursuing further *litigation* against [the Kors defendants] was no longer practical." Noting that they were continuing to pursue their claim against the surety bond, and that the statute of limitations had not yet run, the Bateses argued "[t]hey simply ha[d] decided that pursuing [the Kors defendants] through a costly arbitration to recover damages of only approximately $25,000 was not practical without first pursuing the bond."

8

a. *Ruling*

Following a hearing and after taking the matter under submission, the court granted the motion, awarding reasonable attorney fees in the amount of $14,760 to the Kors defendants. The court explained its ruling in a minute order:

> "[The Bateses] voluntarily dismissed without prejudice their entire complaint against [the Kors defendants], including their cause of action for violation of Family Code section 8628. [¶] [The Kors defendants] have realized their litigation objectives with respect to [their] alleged violation of Family Code section 8628. *The Court, in its discretion, finds that* [*the Kors defendants*] *are the 'prevailing parties' for purposes of section 8638*(*c*). In their opposition to this motion, [the Bateses] do not dispute the amount of the award requested by [the Kors defendants]. Therefore, the motion for attorney's fees is granted in the amount of $14,760[]." (Italics added.)

The Bateses' appeal followed.

DISCUSSION

The issue we must decide is whether the court abused its discretion when it determined the Kors defendants were the prevailing parties within the meaning of section 8638(c) on the complaint that the Bateses filed in the superior court despite the mediation and arbitration provisions in the agreement, and then voluntarily dismissed about six months after the court granted the Kors defendants' petition to compel arbitration, and after the Bateses entered into the settlement agreement with the Kors defendants' codefendants, the Lees. We conclude the court did not abuse its legal discretion.

A. *Applicable Legal Principles*

The court granted the Kors defendants' motion for attorney fees under section 8638(c), which provides: "In any civil action under this chapter, a *prevailing party* may

9

recover reasonable attorney's fees and costs."  (Italics added.)  Section 8638 does not define the term "prevailing party."

Statutory provisions like section 8638(c) that authorize an award of attorney fees to the prevailing party are not subject to the definition of "prevailing party" in the general costs statute (Code Civ. Proc., § 1032)[9] or Civil Code section 1717, subdivision (b).[10] (See *Wohlgemuth v. Caterpillar Inc.* (2012) 207 Cal.App.4th 1252, 1264; *Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1572-1573 (*Heather Farms*); *Galan v. Wolfriver Holding Corp.* (2000) 80 Cal.App.4th 1124, 1128-1129 (*Galan*).)

Rather, as this court has explained, "in deciding prevailing party status . . . , the [trial] court should adopt a pragmatic approach, determining prevailing party status based on which party succeeded on a practical level." (*Graciano v. Robinson Ford Sales, Inc.*

---

[9]    Code of Civil Procedure section 1032, subdivision (a)(4) provides:  "'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant.  When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under [Code of Civil Procedure] Section 1034."

[10]    Civil Code section 1717, subdivision (b) provides in part:  "(b)(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment.  Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract.  The court may also determine that there is no party prevailing on the contract for purposes of this section.  [¶] (2) Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."

(2006) 144 Cal.App.4th 140, 150; see also *Wohlgemuth v. Caterpillar Inc.*, *supra*, 207 Cal.App.4th at p. 1264; *Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1153; *Castro v. Superior Court* (2004) 116 Cal.App.4th 1010, 1018; *Galan*, *supra*, 80 Cal.App.4th at p. 1129; *Heather Farms* , *supra*, 21 Cal.App.4th at p. 1574.)  "Under that approach, the court exercises its discretion to determine 'the prevailing party by analyzing which party realized its litigation objectives.'"  (*Graciano*, *supra*, 144 Cal.App.4th at p. 150, quoting *Castro*, *supra*, 116 Cal.App.4th at p. 1019.)

"This practical approach has been adopted to determine the prevailing party for purposes of awarding attorney fees in a pretrial voluntary dismissal case asserting tort claims . . . when, as here, an attorney fees statute does not define prevailing party [citations]."  (*Castro v. Superior Court*, *supra*, 116 Cal.App.4th at p. 1018, fn. omitted; see also *Galan*, *supra*, 80 Cal.App.4th at p. 1129; *Heather Farms*, *supra*, 21 Cal.App.4th at p. 1574.)  "In these cases . . . the determination to award attorney fees [is] based on whether the party seeking attorney fees ha[s] achieved its main litigation objective." (*Castro*, at p. 1020.)

1.  *Standard of review*

A trial court's discretionary determination of whether a party prevailed on a practical level "should be affirmed on appeal absent an abuse of discretion."  (*Heather Farms*, *supra*, 21 Cal.App.4th at p. 1574; see also *Salehi v. Surfside III Condominium Owners Assn.*, *supra*, 200 Cal.App.4th at pp. 1152-1153.)  "'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered.  The burden is on the party complaining to establish an abuse

11

of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

B. *Analysis*

In awarding attorney fees in favor of the Kors defendants under section 8638(c), the court determined they were the prevailing parties because the Bateses "voluntarily dismissed without prejudice their entire complaint against [the Kors defendants], including their cause of action for violation of [] section 8628," and the Kors defendants "ha[d] realized their litigation objectives." On appeal we review the legal correctness of the court's ruling, not the court's reasoning. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19.)

Based on our review of the record, we conclude the court acted within its legal discretion when it determined the Kors defendants were the prevailing parties within the meaning of section 8638(c). In support of their claim that the court abused its discretion in making this determination, the Bateses first assert they obtained "significant relief" and "realized one of their primary litigation objectives" because they "obtained a settlement from the Lees and an 18-page under oath declaration from [Andrea, the birthmother,] providing the very facts and details that [the Bateses] sought to obtain through their litigation with [the Kors defendants]."

The Bateses dismissed the Lees with prejudice from this action after they and the Lees entered into a confidential settlement agreement and mutual general release. It is

12

not clear from the record whether the Lees agreed to pay some portion of the damages the Bateses sought to recover through their lawsuit. However, the Bateses' cause of action alleging various violations of section 8628 was brought against the Kors defendants, not the Lees.

As the Kors defendants correctly point out, the Bateses could have obtained whatever significant relief they sought from the Lees, including Andrea's declaration, without involving the Kors defendants in disregard of the mediation and arbitration provisions of the agreement between the Bateses and the Kors defendants. Under that agreement the Bateses agreed that any dispute or claim arising out of the agreement or any resulting adoption facilitation services would be mediated before an independent mediator with JAMS/Endispute in Walnut Creek, California, before the parties resorted to arbitration. By initialing the arbitration clause set forth in paragraph 13 of the agreement, the Bateses expressly agreed that they were "giving up any rights [they] might possess to have the dispute litigated in a court or jury trial," and if they "refuse[d] to submit to arbitration after agreeing to this provision, [they could] be compelled to arbitrate under the authority of the California Code of Civil Procedure." In support of their motion for attorney fees, the Kors defendants presented evidence that in defending themselves against the Bateses' lawsuit, they incurred $14,760 in attorney fees. The Bateses do not challenge the court's finding that they did not dispute the amount of the attorney fees award requested by the Kors defendants.

The foregoing shows that when the Bateses commenced their lawsuit against the Kors defendants in disregard of the mediation and arbitration provisions of the

13

agreement, two of the Kors defendants' principal and legitimate litigation objectives in this matter became (1) enforcement of the arbitration agreement by obtaining a court order compelling the Bateses to arbitrate their claims against the Kors defendants, and (2) a court order dismissing or staying the Bateses' lawsuit. The Kors defendants achieved both of these litigation objectives. The Bateses have not shown they have obtained any relief from the Kors defendants.

The Bateses also assert the court's ruling was an abuse of discretion because "the merits of the dispute between [the Kors defendants] and [themselves] were never resolved," and their voluntary dismissal of the complaint was unrelated to the merits of their claims because they "made the practical determination that the mounting financial and personal costs were so great that they chose to dismiss [the Kors defendants] without prejudice to pursue them in an alternative forum" by making a claim against their surety bond.

However, the "mounting financial and personal costs" from the litigation they commenced in disregard of the mediation and arbitration provisions of the agreement were reasonably foreseeable. Also, the record shows that although the Kors defendants obtained a court order compelling the Bateses to arbitrate their claims against the Kors defendants, the Bateses refused to arbitrate their claims.

Citing *Heather Farms*, *supra,* 21 Cal.App.4th 1568, which they claim is "directly on point," the Bateses assert the Kors defendants "certainly did not prevail on a 'practical level' here." The Bateses' reliance on *Heather Farms* is unavailing. There, a homeowners association sued the owner (Robinson) of two units in a residential planned

14

unit development to enforce the governing covenants, conditions and restrictions, alleging he made unauthorized modifications to his units. (*Id*. at p. 1570.) The "complaint spawned a complex series of cross-complaints and subsidiary actions which eventually entangled the association itself" and numerous other parties. (*Ibid*.) After several years of litigation, the various actions were referred to a judge for a special settlement conference, and the judge negotiated a global settlement that resolved the litigation completely and required the association to dismiss its suit against Robinson without prejudice, even though he refused to participate in any agreement with the association. (*Ibid*.) The judge "cautioned that this should not be interpreted as meaning that Robinson had prevailed" (*id.* at pp. 1570-1571), and he expressly found there was no prevailing party. (*Ibid.*) At the conclusion of the settlement, Robinson moved for attorney fees under section 1354 from the association, claiming he was the prevailing party because he received a dismissal. (*Heather Farms, supra,* at p. 1571.) Agreeing with the settlement judge that there was no prevailing party, the trial court ruled that Robinson was not entitled to receive his attorney fees under section 1354. (*Heather Farms, supra,* at pp. 1571.) The Court of Appeal affirmed the ruling, stating that "[t]he association voluntarily dismissed its complaint against Robinson as part of a global settlement agreement, not because he succeeded on some procedural issue or otherwise received what he wanted." (*Id.* at p. 1574.)

Here, unlike Robinson in *Heather Farms*, the Kors defendants did "succeed[] on some procedural issue or otherwise received what [they] wanted." (*Heather Farms, supra*, 21 Cal.App.4th at p. 1574.) As already discussed, they succeeded in achieving

their litigation objectives of (1) enforcing the arbitration agreement by obtaining a court order compelling the Bateses to arbitrate their claims against the Kors defendants and (2) obtaining a dismissal.

In sum, once the Bateses filed their lawsuit against them, the Kors defendants were required to retain counsel and incur a substantial amount of attorney fees to enforce the arbitration provision of the agreement. By successfully bringing their petition to compel arbitration and obtaining a voluntary dismissal of the Bateses' complaint, the Kors defendants obtained litigation relief on a practical level. Although the Bateses obtained some relief from the Lees, they could have obtained that relief without suing the Kors defendants in disregard of the provisions of the agreement. Thus, the court did not exceed the bounds of reason by determining the Kors defendants were the prevailing parties.

## DISPOSITION

The postjudgment order is affirmed. The Kors defendants are entitled to their costs on appeal.

NARES, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.

16