Filed 4/19/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ALMANOR LAKESIDE VILLAS OWNERS ASSOCIATION, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JAMES CARSON et al., <br><br> Defendants and Appellants. | H041030 <br> (Santa Clara County <br> Super. Ct. No. 1-12-CV230676) |

The Almanor Lakeside Villas Owners Association (Almanor) is the homeowner's association for the common interest development where appellants James and Kimberly Carson own properties. Almanor sought to impose fines and related fees of $19,979.97 on the Carsons for alleged rule violations related to the Carsons' leasing of their properties as short-term vacation rentals. The Carsons disputed both the fines and Almanor's authority to enforce those rules, which the Carsons viewed as unlawful and unfair use restrictions on their commercially zoned properties. Almanor sued, contending that its enforcement of rules against the Carsons was proper under governing law and the Covenants, Conditions and Restrictions (CC&Rs) for the development. The Carsons cross-complained for breach of contract, private nuisance, and intentional interference with prospective economic advantage. The Carsons contended their properties were exempt based on contract and equitable principles and argued Almanor's actions amounted to an unlawful campaign to fine them out of business.

Following a bench trial, the court ruled against the Carsons on their cross-complaint but also rejected as unreasonable many of the fines that Almanor had sought to

impose. The court upheld a subset of the fines pertaining to the use of Almanor's boat slips and ordered the Carsons to pay Almanor $6,620.00 in damages. On the parties' competing motions for attorney's fees, the court determined Almanor to be the prevailing party and awarded $101,803.15 in attorney's fees and costs.

On appeal, the Carsons challenge the disposition of their cross-complaint and the award of attorney's fees in favor of Almanor. The Carsons contend that uncontroverted evidence supported a finding in favor of their breach of contract cause of action because they paid Almanor $1,160 in fines that the court ultimately disallowed. The Carsons also contend that the trial court abused its discretion when it deemed Almanor the prevailing party despite having disallowed a majority of the fines it sought to impose. The Carsons also challenge the amount of the attorney's fees award in light of Almanor's limited success at trial. Almanor responds that the Carsons have waived any appeal of alleged error in the court's finding on damages because they failed to raise the issue in response to the trial court's proposed statement of decision. As to the award of attorney's fees, Almanor argues that the court correctly determined it to be the prevailing party and did not abuse its discretion in awarding Almanor's full fees. For the reasons stated here, we will affirm the judgment as to the Carsons' cross-complaint, the determination of Almanor as prevailing party, and the award of attorney's fees.

## I.    FACTUAL AND PROCEDURAL HISTORY

### A.  HISTORY OF THE PROPERTIES AND UNDERLYING DISPUTE

The Kokanee Lodge and Carson Chalets are located within the Almanor Lakeside Villa development on Lake Almanor in Plumas County.[1] Almanor is a homeowners association operating under the Davis-Stirling Common Interest Development Act (Davis-Stirling Act), codified at sections 4000–6150 of the Civil Code (formerly

---

[1] The venue of the underlying action is Santa Clara County, where the Carsons reside.

Civ. Code, §§ 1350–1376). The lodge and two chalets (the properties) are among only a few lots in the Almanor development that accommodate commercial use; the development otherwise is strictly residential. The properties' commercial designation stems from the historic use of the lodge, which preexisted the subdivision and operated as a hunting, fishing, and vacation lodge.

The Carsons purchased the properties in 2001 and 2005 for use as short term vacation rentals. The properties are subject to the CC&Rs of the Almanor development. As relevant to this appeal, section 4.01 of the CC&Rs designated certain lots, including the properties, that could be utilized for commercial or residential purposes. Section 4.09 prohibited owners from using their lots "for transient or hotel purposes" or renting for "any period less than 30 days." Section 4.09 also required owners to report any tenants to Almanor's board of directors by notifying the board of the name and address of any tenant and the duration of the lease.

In approximately 2009, the Almanor board changed composition and began to develop regulations to enforce the CC&Rs. By way of example, the 2010 rules sought to enforce section 4.09 of the CC&Rs to limit rentals to a minimum of 30 days. The 2011 and 2012 rules exempted the commercial lots from the 30-day rental restriction but maintained the requirement to provide a copy of any rental agreement to the association seven days before the rental period. The rules also purported to regulate other aspects of association life affecting the properties, such as parking, trash storage, use of common areas, and issuing decals for any boats using Almanor boat slips. And they set a schedule of fines for violations.

The Carsons believed their properties were exempt from the use restrictions of the CC&Rs, including the Section 4.09 restriction on short term rentals and the related reporting requirements. Several historic factors supported this belief, including that the Carsons had operated the properties as a short term vacation rental business for many

3

years. The Carsons similarly did not believe that the rules adopted by the board in 2010, 2011, and 2012 applied to their properties.

Although the Carsons initially tried to comply with the renter reporting requirements, they continued to insist that section 4.01 of the CC&Rs and the long-established commercial status of the properties exempted them from the use restrictions and related rules. The board issued its first fines against the Carsons in September 2010, and continued to fine the Carsons throughout 2011 and 2012 for a wide range of purported violations, which the Carsons disputed.

The Carsons had stopped paying homeowner's association dues on the properties for about two years, for reasons unrelated to the dispute over fines. In June 2012, the Carsons paid $14,752.35 toward delinquent dues on the properties, instructing that all of the money be applied to unpaid dues, not to the disputed fines. They stated in writing that the lump payment brought them current on dues. At trial, the parties disagreed whether the June 2012 payment actually covered the balance of dues that the Carsons owed. According to the Carsons, Almanor improperly applied $1,160 of the payment toward the fines imposed in 2011. Almanor insisted that a balance of unpaid dues remained and was reflected on the following months' bills to the Carsons, along with the unpaid fines, attorney's fees, and accruing interest.

## B. TRIAL COURT PROCEEDINGS

In its trial brief, Almanor estimated that the Carsons owed about $54,000 in dues, fees, fines and interest. Having cross-complained for damages and equitable relief based on breach of contract, private nuisance, and intentional interference with prospective economic advantage, the Carsons sought to establish that Almanor's imposition of fines was "totally unlawful," arbitrary and unfair, and reflected an effort to try to "fine the Carson's [sic] business out of existence." They argued that the "CC&Rs clearly do not contemplate the commercial businesses that sit on the subdivision's land. In fact, these commercial lots are exempt by contract, based on principles of waiver, and by public

4

policy." The Carsons asserted that they "have been nearly put out of business and, even if Cross-Defendant's conduct halts now, they will have immense lost income for the next 5-10 years."

After a bench trial, the court issued its tentative decision. It concluded that the 30-day minimum rental restriction imposed by section 4.09 of the CC&Rs presented an "obvious conflict" with section 4.01, which "expressly allow[ed] the Carsons to use their lots for commercial purposes (presumably including lodging, since the properties are, in fact, lodges)." Citing *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 386 (*Nahrstedt*), the trial court determined that it would be unreasonable to strictly enforce the absolute use restrictions against the Carsons. It explained: "Given the conflict between Section 4.01 and 4.09, the general rule espoused in *Nahrstedt*, that a use restriction in an association's recorded CC&Rs is presumed to be reasonable and 'will be enforced uniformly against all residents of the common interest development,' should not apply." The court noted, however, that it did "not [ ]accept the Carsons' argument that the conflict completely eliminates Almanor's ability to impose reasonable use restrictions on the Carsons' lots, consistent with the Carsons' right to use their lots for commercial lodging purposes."

Of the fines imposed in 2010, 2011, and 2012, the court concluded only the fines pertaining to the non-use of Almanor's boat decals were reasonable. Those fines amounted to $6,620, including late charges and interest. The court did not find adequate support for Almanor's claim that the Carsons continued to owe unpaid dues. As to the Carsons' cross-complaint, the court found they had not proven by competent evidence that Almanor's alleged breaches of the CC&Rs caused damages or resulted in discernible lost profits.

The Carsons requested a statement of decision, asking whether they had suffered damages based on a former renter's decision not to return to the properties after alleged mistreatment by Almanor board members, and whether violations relating to boat slips

and decals had been properly imposed. The court issued a proposed statement of decision, to which neither party responded, followed by a final statement of decision and judgment. The final statement of decision was consistent with the tentative decision and repeated the court's findings regarding the applicability of reasonable use restrictions to the Carsons' properties. On the cross-complaint, the court concluded that even assuming Almanor had breached the CC&Rs, the Carsons had not proven damages. The Carsons were ordered to pay $6,620.00 in damages to Almanor, and they received nothing on their cross-complaint.

## C. CROSS-MOTIONS FOR ATTORNEY'S FEES AND COSTS

The parties moved for attorney's fees and costs pursuant to the fees provision of the Davis-Stirling Act, Civil Code section 5975 (formerly Civ. Code, § 1354). Civil Code section 5975 awards attorney's fees and costs to the prevailing party in an action to enforce the CC&Rs of a common interest development.

Each side argued it was the prevailing party under the statute. Because the statement of decision confirmed that the properties' commercial zoning did not preclude reasonable use restrictions in the CC&Rs, Almanor argued that it had achieved one of its main litigation objectives. Almanor also argued that having prevailed on a portion of the fines claimed, an attorney's fees award was mandatory under the Davis-Stirling Act.

The Carsons asserted that they had achieved their main objective, which was to deny Almanor the financial windfall it sought and to establish that the fines were unreasonable and imposed a severe and unfair burden on their lawful, commercial use of the properties. They also argued that monetarily, Almanor had prevailed as to only $6,620 out of $54,000. The Carsons asserted that this net monetary recovery was insufficient because they had largely prevailed on the pivotal issue at stake. Both sides challenged the other's request for fees as unreasonable and excessive.

The trial court held a hearing and took the motions under submission. In a brief written order, it deemed Almanor the prevailing party. The court granted Almanor's

6

motion for $98,535.50 in attorney's fees and $3,267.65 in costs and denied the Carsons'
motion. The court annotated the final judgment to reflect the $101,803.15 in attorney's
fees and costs, in addition to the $6,620 in damages.

## II.    DISCUSSION

The Carsons' appeal presents three distinct issues. We first consider whether the
trial court erred in disposing of the Carsons' cause of action for breach of contract. We
then consider the parties' competing claims for attorney's fees and whether the trial court
erred in deeming Almanor the prevailing party. Last we consider whether the trial court
abused its discretion in awarding Almanor its full attorney's fees.

### A. DISPOSITION OF THE CARSONS' CAUSE OF ACTION FOR BREACH OF CONTACT

The Carsons challenge the trial court's determination that they failed to prove
damages for their breach of contract cause of action. Almanor argues that the Carsons
waived any alleged error regarding contract damages by failing to raise the issue in
response to the court's tentative decision.

### 1.    Standard of Review

On appeal from a determination of failure of proof at trial, the question for the
reviewing court is "whether the evidence compels a finding in favor of the appellant as a
matter of law." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011)
196 Cal.App.4th 456, 466 (*Sonic*).) Specifically, we must determine "whether the
appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a
character and weight as to leave no room for a judicial determination that it was
insufficient to support a finding.' " (*Id.* at p. 466 [quoting *In re I.W.* (2009)
180 Cal.App.4th 1517, 1527–1528].) We are also guided by the principle that the trial
court's judgment is presumed to be correct on appeal, and we indulge all intendments and
presumptions in favor of its correctness. (*In re Marriage of Arceneaux* (1990)
51 Cal.3d 1130, 1133 (*Arceneaux*).)

7

## 2. Waiver

Almanor contends the Carsons failed to preserve for appeal the issue of damages from fines paid, which according to Almanor is actually a claim for offset.[2]  Almanor points to *Arceneaux*, in which the California Supreme Court clarified the procedural basis for the presumption on appeal that a judgment or order of a lower court is correct. (*Arceneaux*, at p. 1133.)  The Court in *Arceneaux* held that pursuant to Code of Civil Procedure section 634,[3] a litigant who fails to point the trial court to alleged deficiencies in the court's statement of decision waives the right to assert those deficiencies as errors on appeal.[4]  (*Arceneaux*, at p. 1132.)  Because the Carsons failed to raise the alleged error regarding damages when the court issued its proposed statement of decision, Almanor argues that any assertion of error is waived.  The Carsons respond that *Arceneaux* and section 634 are inapposite because their appeal is not based on an issue that was omitted or treated ambiguously in the statement of decision.

We agree that *Arceneaux* is of limited application because the Carsons' appeal as to this issue is premised on an unambiguous factual finding in the statement of decision. A trial court's statement of decision need not address all the legal and factual issues raised by the parties; it is sufficient that it set forth its ultimate findings, such as on an

---

[2] We need not resolve Almanor's suggestion that the alleged damages be viewed as an offset because, as we will explain, we do not find support in the record for the Carsons' claim that uncontroverted evidence established that fines paid were damages resulting from Almanor's alleged breach of the CC&Rs.

[3] Undesignated statutory references are to the Code of Civil Procedure.

[4] A litigant who wishes to preserve a claim of error and avoid the application of inferences in favor of the judgment must follow the two-step process set by sections 632 and 634.  First, when the court announces a tentative decision, "a party must request a statement of decision as to specific issues to obtain an explanation of the trial court's tentative decision." (*Arceneaux*, at p. 1134; § 632.)  Second, when the trial court issues its statement of decision, a party claiming deficiencies must raise any objection "to avoid implied findings on appeal favorable to the judgment." (*Arceneaux*, at p. 1134; § 634.)

8

element of a claim or defense. (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 559.) Here the court's statement of decision did not specifically reference the $1,160 damages claim now asserted by the Carsons, but the court did address the element of damages, finding that it had not been proven by competent evidence.[5] Inasmuch as the trial court stated its finding on damages and did not omit the issue or treat it ambiguously, the Carsons' failure to identify deficiencies in that aspect of the proposed statement of decision did not result in waiver of the type discussed in *Arceneaux*, *supra*, at pp. 1132–1133.

Because the Carsons never asked the trial court to make specific findings on the theory of damages they now appeal, the doctrine of implied findings remains applicable. That is, we presume that the trial court made the necessary factual findings in support of its ultimate finding on damages. (§ 634; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 61–62 [appellate court infers all necessary factual findings in support of prevailing party on issue to support judgment, then reviews the implied findings under substantial evidence standard].) We turn to a review of those findings.

### 3. The Carsons' Proof of Damages

To support their contention that the trial court erred in finding insufficient proof of damages on their breach of contract cause of action, the Carsons draw on the court's findings that most of the fines imposed by Almanor were unreasonable. The Carsons

---

[5] The Carsons had offered trial testimony of a longtime renter who chose not to return after 2012 because she and her group felt uncomfortable and scrutinized by certain Almanor homeowners and board members during their stay. The court found the testimony insufficient to establish a breach of the CC&Rs. On the subject of damages the Carsons asked the court to explain its decision on the evidence related to the renter who had decided not to return. The trial court's proposed statement of decision addressed that evidence but did not address the $1,160 on which basis the Carsons now appeal. The Carsons did not object to the proposed statement of decision. (Cal. Rules of Court, rule 3.1590(g) [parties have 15 days from service of proposed statement of decision to serve and file any objections].)

assert that because Almanor imposed fines ultimately disallowed by the court, they must have proven a breach of the CC&Rs. They further assert that evidence of their payment of a portion of those fines was uncontroverted. The Carsons point to their June 2012 payment of $14,752.35 to bring the dues current on their properties and argue that Almanor applied $1,160 to fines the court determined were not owed. They argue that their payment constituted cognizable, measurable damage equivalent to the amount paid, plus interest. (Civ. Code, § 3302.) The Carsons argue that instead of considering this proof, the court focused solely on the Carsons' evidence pertaining to loss of business income, which the court ultimately concluded was too speculative.

It is uncontroverted that the Carsons paid Almanor a lump sum of $14,752.35 intended to bring current the dues on the properties. However, whether this amount in fact paid the dues in full, or whether some went toward fines that ultimately were disallowed, is difficult to discern from the record. The trial court concluded as much when it reviewed the same evidence in connection with Almanor's open book stated cause of action. Almanor used the same accounting and billing statements to try to prove its position on unpaid dues as the Carsons have cited on appeal as evidence that Almanor applied $1,160 toward disallowed fines. The court's statement of decision demonstrated a careful review of this evidence and concluded: "The Court cannot, with any confidence, discern the amount of dues owed by the Carsons at any given time. Although it is undisputed that the Carsons fell behind at some point on their association dues, and that they made several large payments to Almanor to pay off some component of what they owed, the Court finds that Almanor has failed to carry its burden of proving the 'amount owed' on dues, which is a necessary element of their open book cause of action with respect to the dues component of any damage award."

Moreover, the trial record does not reveal that the Carsons articulated this theory of contract damages. For example, in the cross-examination of Almanor's accountant, who was responsible for Almanor's billing during the relevant period in 2012, counsel

10

did not raise the issue of $1,160 being improperly applied to fines. At closing argument on the cross-complaint, the record reflects no mention of this payment as a basis for contract damages. The damages case instead centered on the Carsons' attempt to show lost profits and loss of business goodwill. At one point the trial court asked, "Where are the damages, the monetary damages associated with that alleged breach of contract?" The Carsons' response referenced attorney's fees to "enforce the CC&Rs," interference with quiet enjoyment, and lost customers.

The only mention of the $1,160 payment appeared in the Carsons' supplemental written closing argument, in which they argued that Almanor "intentionally, or recklessly" mislabeled "rental violations" as "[s]pecial [a]ssessments," resulting in Almanor paying rental violations instead of the dues as requested and required. That argument is not evidence sufficient to compel a finding that the Carsons suffered financial loss as a result of Almanor's alleged breach of the CC&Rs. (*Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486 [where the judgment is against the party with the burden of proof, it is "almost impossible" to prevail on appeal by arguing the evidence compels a judgment in that party's favor].) The documentary evidence, which lacks any corroborating testimony to establish that Almanor shifted $1,160 of dues payment toward disallowed fines, does not satisfy the test for " 'uncontradicted and unimpeached' " evidence that leaves " 'no room for a judicial determination that it was insufficient to support' " the finding that the Carsons seek. (*Sonic*, *supra*, 196 Cal.App.4th at p. 466.)

On this record, the trial court's finding that the Carsons failed to establish damages by competent evidence was sound, and the Carsons have not shown that evidence presented to the trial court should have compelled a contrary outcome.

11

**B. DETERMINATION OF THE PREVAILING PARTY AND AWARD OF ATTORNEY'S FEES**

The Carsons and Almanor both claim to be the prevailing party, triggering an attendant award of fees and costs. The Carsons also contend that public policy and fairness require a reversal of the attorney's fees award.

**1. Statutory Scheme**

The Davis-Stirling Act governs an action to enforce the recorded covenants and restrictions of a common interest development. Civil Code section 5975 provides that the CC&Rs may be enforced as "equitable servitudes" and that "[i]n an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." (Civ. Code, § 5975, subds. (a), (c).) Reviewing courts have found that this provision of the Davis-Stirling Act "reflect[s] a legislative intent that [the prevailing party] receive attorney fees *as a matter of right* (and that the trial court is therefore *obligated* to award attorney fees) whenever the statutory conditions have been satisfied." (*Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1152 (*Salehi*) [emphasis in original] [citing *Hsu v. Abbara* (1995) 9 Cal.4th 863, 872 (*Hsu*)].)

The Davis-Stirling Act does not define "prevailing party" or provide a rubric for that determination. In the absence of statutory guidance, California courts have analyzed analogous fee provisions and concluded that the test for prevailing party is a pragmatic one, namely whether a party prevailed on a practical level by achieving its main litigation objectives. (*Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574 (*Heather Farms*); *Salehi, supra*, at pp. 1153–1154.)

The California Supreme Court implicitly has confirmed this test. In *Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 94, the court affirmed the award of attorney's fees in an action to enforce a restrictive covenant under the Davis-Stirling Act, stating: "We conclude the trial court did not abuse its discretion in determining that the Association was the prevailing party … . On a 'practical level'

12

[citation], the Association 'achieved its main litigation objective.' " (*Ibid.* [quoting *Heather Farms*, at p. 1574 and *Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 46].)

## 2. Determination of The Prevailing Party

We review the trial court's determination of the prevailing party for abuse of discretion. (*Villa De Las Palmas Homeowners Assn. v. Terifaj, supra,* at p. 94; *Heather Farms,* at p. 1574.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339.) As the California Supreme Court has explained in the related context of determining the prevailing party on a contract under Civil Code section 1717, the trial court should "compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made … by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' " (*Hsu, supra,* at p. 876.)

The Carsons urge that they, not Almanor, attained their litigation objectives. They argue that but for their success in defeating most of the fines imposed by Almanor, they would have continued to face additional fines, making it impossible to continue to operate their business. They also argue that the trial court erred by focusing on net monetary recovery in determining who was the prevailing party.

In support of their position, the Carsons cite *Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136 (*Sears*), in which the guarantor of a lease sued to recover $112,000 on a payment that he had made on the guaranty, which he contended was invalidated by a revocation. The defendant cross-complained for additional money under the guaranty. (*Id.* at p. 1140.) The trial court found that the guaranty was valid but that the plaintiff

13

was entitled to recover some $67,000 plus interest because of payments the defendant had received in relation to the lease. (*Id.* at pp. 1140–1141.) Notwithstanding the plaintiff's monetary recovery, the trial court deemed the defendant the prevailing party under the applicable fee provision and awarded attorney's fees and costs. (*Ibid.*) The court of appeal affirmed the award, explaining: "The complaint and record demonstrate enforcement of the guaranty was the pivotal issue. [Plaintiff] received money *not* because the court found [defendant] liable for breach of contract. Instead, the court ordered [defendant] to return a portion of [plaintiff's] payment because of the fortuitous circumstances [surrounding defendant's receipt of other payments related to the lease]." (*Sears*, at p. 1159.)

Whereas the pivotal issue in *Sears* was enforcement of the guaranty, the pivotal issue here was whether Almanor's fines were enforceable under the CC&Rs and governing body of California law. It is true that the Carsons prevailed to the extent of the fines that the court disallowed.[6] That partial success substantially lowered the Carsons' liability for damages and supported their position that the CC&Rs and associated rules could not impose an unreasonable burden on the properties. Yet by upholding a subset of the fines, the court ruled more broadly that Almanor could impose reasonable use restrictions on the Carsons' properties, despite their authorized commercial use. That ruling echoed Almanor's stated objective at trial that the association sought to counter the Carsons' position that "because their lot is zoned 'Commercial,' they are not bound by the CC&R's or the Rules."

---

[6] Out of 88 fines that Almanor sought to enforce at trial, the trial court upheld only eight. Almanor admits that it did not attain all of its litigation objectives and that a total victory would have resulted in a higher monetary recovery had the court found that all of the fines imposed were reasonable and enforceable.

The mixed results here are distinguishable from those in *Sears*, in which there was a clear win by the defendant on the pivotal issue of the guaranty, and the monetary award was fortuitous and unrelated to the determination of liability. (*Sears, supra,* at p. 1159.) Where both sides achieved some positive net effect as a result of the court's rulings, we compare the practical effect of the relief attained by each. (*Hsu*, *supra*, at p. 876.) Here, the trial court's findings eliminated many of the alleged rule violations that depended on the Carsons being in arrears on dues and rejected those fines by which Almanor tried to strictly enforce the absolute use restrictions on the Carsons' lots. Insofar as the court found that some of the fines were enforceable, Almanor met its objective and satisfied the first part of the statutory criteria under the Davis-Stirling Act "to enforce the governing documents." (Civ. Code, § 5975, subd. (c).) The fractional damages award does not negate the broader, practical effect of the court's ruling, which on the one hand narrowed the universe of restrictions that Almanor could impose on the properties, but on the other hand cemented Almanor's authority to promulgate and enforce rules pursuant to the CC&Rs so long as not unreasonable under *Nahrstedt*. Thus the trial court rejected the Carsons' position that the ambiguity in the CC&Rs "completely eliminate[d] Almanor's ability to impose reasonable use restrictions on the Carsons' lots, consistent with the Carsons' right to use their lots for commercial lodging purposes." The court also ruled entirely in favor of Almanor on the Carsons' cross-complaint by finding that the Carsons' alleged damages were unsupported by competent evidence and too speculative.

Taken together and viewed in relation to the parties' objectives as reflected in the pleadings and trial record, we conclude that these outcomes were adequate to support the trial court's ruling.[7] (*Goodman v. Lozano*, *supra,* 47 Cal.4th at p. 1339.) In reviewing a

---

[7] We do not find support in the record for the Carsons' contention that until the motion for attorney's fees, Almanor's sole litigation objective had been to collect a monetary award. From the inception of the litigation, Almanor's ability to collect a

(*Continued*)

decision for abuse of discretion, we do not substitute our judgment for that of the trial court when more than one inference can be reasonably deduced from the facts. (*Ibid.*) The trial court did not abuse its discretion in determining Almanor to be the prevailing party.

### 3. Public policy

The Carsons argue that the fee award flouts public policy because it: (1) creates disincentive for homeowners to defend against unlawful fines levied by the association, and (2) rewards the association for acting in an egregious manner by imposing fines that were, for the most part, unlawful. The Carsons suggest that by granting attorney's fees to Almanor, "the Court is stating that the Carsons should have paid the $54,000.00 that Respondent claimed was owed …, even though only $6,620.00 was actually owed, because they would be penalized for defending themselves and, in the end, owe an additional $101,803.15 in attorney's fees for defending themselves." The Carsons offer no direct authority to support their position but contend that this outcome contradicts California public policy which seeks to ensure that creditors do not overcharge debtors for amounts not owed.[8]

This argument runs contrary to the statutory scheme governing the fee award in this case. As the trial court correctly noted at the hearing on the competing motions for attorney's fees, the Davis-Stirling Act mandates the award of attorney's fees to the prevailing party. (Civ. Code, § 5975; *Salehi, supra*, 200 Cal.App.4th at p. 1152

monetary award depended on the court finding that it was authorized to impose those rules and to fine for violations. Throughout the trial record, including in Almanor's trial brief, opening and closing remarks, and supplemental closing argument, Almanor emphasized that it sought to enforce the CC&Rs and disabuse the Carsons of their belief that the commercial zoning of their property immunized them from the use restrictions.

[8] In support of this point, the Carsons cite to the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.), which holds a debt collector liable to a debtor for violating the debt collection practices act. (Civ. Code, § 1788.30.)

16

[language of Civ. Code, § 5975 reflects legislative intent to award attorney's fees as a matter or right when statutory criteria are satisfied].) After resolving the threshold issue of the prevailing party, the trial court had no discretion to deny attorney's fees. (*Salehi,* at p. 1152.) Any argument concerning the magnitude of the fees award, especially in comparison to the damages awarded or originally sought, is better directed at challenging the reasonableness of the award amount. The amount to be awarded is distinct from whether an award is justified, and " 'the factors relating to each must not be intertwined or merged.' " (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 153 [quoting *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 647].)

## C. REASONABLENESS OF THE FEE AWARD

The remaining question is whether the attorney's fees award of $98,535.50 was reasonable. What constitutes reasonable attorney's fees is committed to the discretion of the trial court. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095–1096 (*PLCM Group*).) "An appellate court will interfere with the trial court's determination of the amount of reasonable attorney fees only where there has been a manifest abuse of discretion." (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1004 (*Monroy*).)

The Carsons argue that the trial court abused its discretion by awarding fees which are "grossly disproportionate" to the monetary award and scale of success on the claims litigated.[9] The Carsons point to section 1033, subdivision (a) for the proposition that the court, in its discretion, can disallow attorney's fees and costs if a party obtains less than the statutory minimum to be classified as an unlimited civil matter. Yet their briefs on appeal offer no case or other authority to support the proposed application of section 1033, subdivision (a) to a mandatory fees award under Civil Code section 5975.

---

[9] The Carsons do not raise on appeal the trial court's methodology or computation of time spent on the case.

The Carsons also argue that the trial court should have apportioned the award to reflect the court's rejection of all but a single category of fines imposed, representing eight out of eighty-eight fines. Again, the Carsons fail to cite any authority to support a reduction based on the degree of success in a Davis-Stirling Act case. We observe that "it is counsel's duty by argument and citation of authority to show in what respects rulings complained of are erroneous." (*Wint v. Fidelity & Casualty Co.* (1973) 9 Cal.3d 257, 265.) Although we will not treat the Carsons' arguments as waived, we caution that "an appellate brief 'should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' " (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546 [quoting *In re Marriage of Schroeder* (1987) 192 Cal.App.3d 1154, 1164].)

Almanor does not respond to these arguments on appeal, though it argued in its attorney's fees motion that when an owner's association seeks to enforce CC&Rs and attains its litigation objective, based on the mandatory nature of the fee award, "it is irrelevant that the verdict/judgment amount is below $25,000."

### 1. Discretion to Reduce or Eliminate Fees Under Section 1033

Under section 1033, subdivision (a), if a plaintiff brings an unlimited civil action and recovers a judgment within the $25,000 jurisdictional limit for a limited civil action, the trial court has the discretion to deny, in whole or in part, costs to the plaintiff.[10] (*Carter v. Cohen* (2010) 188 Cal.App.4th 1038, 1052; *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 982–983 (*Chavez*).) Section 1033 relates to the general cost

---

[10] Section 1033, subdivision (a) states that "[c]osts or any portion of claimed costs shall be as determined by the court in its discretion in a case other than a limited civil case in accordance with Section 1034 where the prevailing party recovers a judgment that could have been rendered in a limited civil case." (§ 1033, subd. (a).)

recovery provisions set forth in the Code of Civil Procedure. We briefly consider its applicability to the recovery of attorney's fees under the Davis-Stirling Act.

In *Chavez,* the California Supreme Court examined the application of section 1033, subdivision (a) to an action brought under the California Fair Employment and Housing Act (FEHA), which grants the trial court discretion to award attorney's fees to a prevailing party. (*Chavez*, at pp. 975–976.) The court in *Chavez* held that by its plain meaning, section 1033, subdivision (a) applies in the FEHA context and gives the trial court discretion to deny attorney's fees to a plaintiff who prevails under FEHA but recovers an amount that could have been recovered in a limited civil case. (*Chavez,* at p. 976.) The court explained: "[W]e perceive no irreconcilable conflict between section 1033(a) and the FEHA's attorney fee provision. In exercising its discretion under section 1033(a) to grant or deny litigation costs, including attorney fees, to a plaintiff who has recovered FEHA damages in an amount that could have been recovered in a limited civil case, the trial court must give due consideration to the policies and objectives of the FEHA and determine whether denying attorney fees, in whole or in part, is consistent with those policies and objectives." (*Chavez*, at p. 986.)

The reasoning of *Chavez* is of limited applicability here. Unlike the fee provision under FEHA, which is discretionary and thereby not irreconcilable with section 1033, subdivision (a), the fee-shifting provision of the Davis-Stirling Act is mandatory. (Civ. Code, § 5975; *Salehi, supra*, 200 Cal.App.4th at p. 1152.) The circumstances in which a court might deny or reduce a fee award under a permissive statutory provision, like FEHA, such as because special circumstances "would render an award unjust," do not apply equally where a statute mandates attorney's fees to the prevailing party. (*Graciano v. Robinson Ford Sales, Inc., supra,* 144 Cal.App.4th at p. 160 [principles applicable to permissive attorney's fee statutory provisions do not apply to mandatory fee-shifting statutory provisions].) Given its uncertain applicability to the recovery of

19

attorneys' fees under Civil Code section 5975 and counsel's failure to suggest specific authority for its application, we decline to find an abuse of discretion in this context.

## 2. Discretion to Reduce Fee Award Based on Degree of Success

The Carsons also contend that the trial court could have and should have apportioned the award to those attorney's fees that Almanor incurred in proving the eight fines on which it succeeded. It is well settled that the trial court has broad authority in determining the reasonableness of an attorney's fee award. (*PLCM* Group, *supra*, 22 Cal.4th at p. 1095.) This determination may, at times, include a reduction or apportionment[11] of fees in order to arrive at a reasonable result. "After the trial court has performed the calculations [of the lodestar], it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the [] award so that it is a reasonable figure." (*Id.* at pp. 1095–1096.)

We look to a few cases that address the justifications for reducing a fee award. In a case involving a mandatory fee-shifting statute similar to that under the Davis-Stirling Act, the appellate court upheld an attorney's fees award of $89,489.60 for the defendant borrower and cross-complainant even though she recovered only a nominal $1.00 in

---

[11] The Carsons' use of the term "apportion" is not entirely accurate. In the context of attorney's fee awards, apportionment generally refers to divvying fees as between meritorious or paying parties in a multi-party case (see, e.g., *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 250 (*Sokolow* ) [fees statute did not address apportioning attorney's fees between defendants, but court opined it would be "appropriate for the trial court to assess a greater percentage of the attorney fees award against the County rather than making an equal assessment between the County and the Patrol"]), or as between causes of action wherein a party has alleged multiple causes of action, only some of which are eligible for a statutory fee award (see, e.g., *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1367–1368 [court granted in part defendants' motions for attorney's fees and apportioned the amount of fees requested to only those causes of action that "fell within the purview of Civil Code section 1354"].).

20

statutory damages on her consumer debt-collection based claims. (*Monroy*, *supra*, 215 Cal.App.4th at p. 986) The court deemed the borrower the prevailing party and found she was entitled to her full attorney's fees relating to her successful cross-complaint based on the Fair Debt Collection Practices Act (FDCPA),[12] as well as to her defense of the plaintiff's complaint. (*Id.* at p. 987.) The *Monroy* court rejected the financial institution's argument that the award should have been reduced to reflect the borrower's limited degree of success. (*Id.* at pp. 1004–1105.)

Citing U.S. Supreme Court[13] and California precedent in various statutory fee-shifting contexts for the proposition that "the degree or extent of the plaintiff's success must be considered when determining reasonable attorney fees," the *Monroy* court concluded that the circumstances of the case did not warrant a reversal of the fee award for abuse of discretion. (*Monroy*, *supra,* at pp. 1005–1006.) The court based its decision on factors including the borrower's position as defendant and cross-complainant, her choice not to allege actual damages but to request only statutory damages under the FDCPA, the fact that the nominal award still represented a complete success and could

---

[12] As with an attorney's fee award under section 5975 of the Davis-Stirling Act, the federal FDCPA provides for mandatory attorney fees to be awarded to the prevailing party, although courts have discretion in calculating the reasonable amount. (*Monroy, supra*, 215 Cal.App.4th at p. 1003.)

[13] In *Hensley v. Eckerhart* (1983) 461 U.S. 424, 434–435, the Supreme Court addressed application of a fee shifting statute in civil rights litigation (42 U.S.C. § 1988) when the plaintiffs had achieved only partial success. The fee provision in *Hensley* was permissive and provided that the court "may" in its discretion award the prevailing party a reasonable attorney's fee. (*Hensley,* at p. 426.) Noting that when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount," the Court held that the district court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." (*Id.* at pp. 436–437.)

prompt the financial institution "to cease unlawful conduct against other consumers." (*Id.* at p. 1007)

Reductions to the award of attorney's fees also arise in cases applying California's private attorney general statute.[14] One such case, *Sokolow, supra,* 213 Cal.App.3d 231, involved alleged sex discrimination by a county sheriff's department and a closely-affiliated, private mounted patrol that maintained a male-only policy. On cross-motions for summary judgment, the court ruled for the plaintiffs as to certain equal protection violations and imposed permanent injunctions on the patrol and the sheriff's department directed at terminating their working relationship and any appearance of partnership. (*Id.* at pp. 241–242.) Yet the court denied the plaintiffs' request for attorney's fees under the applicable federal and state statutory fee provisions. (*Id.* at p. 242.)

The court of appeal reversed the attorney's fees decision because the plaintiffs were the prevailing parties, but remanded to the trial court for a determination of the amount of reasonable fees. (*Sokolow,* at pp. 244, 251.) With respect to the fees under section 1021.5, the court noted that "a reduced fee award is appropriate when a claimant achieves only limited success." (*Sokolow,* at p. 249.) The court offered specific examples of results that the plaintiffs had sought and failed to obtain through the injunction, such as "obtaining admission for women into the Patrol" or "entirely eliminating the County's training and use of the Patrol for search and rescue missions." (*Id.* at p. 250.) The court indicated that these "were important goals of appellants' lawsuit which they failed to obtain." (*Ibid.*) Thus, in arriving at an award of reasonable attorney's fees, the court directed the trial court to "take into consideration the limited success achieved by appellants." (*Ibid.*)

---

[14] The fee recovery provision under this statute provides that a court "may award attorney's fees to a successful party … in any action which has resulted in the enforcement of an important right affecting the public interest." (§ 1021.5.)

Similarly, in *Environmental Protection Information Center v. Department of Forestry and Fire Protection* (2010) 190 Cal.App.4th 217, 222–224 (*EPIC III*), the court addressed attorney's fees after the plaintiff environmental and labor groups had succeeded in part in challenging the validity of regulatory approvals related to a logging plan affecting California old growth forest. With regard to the defendants' arguments that any fee award should be reduced based on the plaintiffs' limited success on the merits, the appellate court conducted a two-part inquiry.[15] (*Id.* at. p. 239.) It first determined that the environmental group plaintiffs' unsuccessful claims were related to the successful claims, such that attorney's work spent on both sets of claims were not practicably divisible. (*Id.* at p. 238.) The court explained that because the successful and unsuccessful claims were related, the trial court on remand would need to assess the level of success or " ' "significance of the overall relief obtained by the plaintiff[s] in relation to the hours reasonably expended on the litigation." ' " (*Id.* at p. 239 [quoting *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 414].)

We draw a few general conclusions from these cases. As we noted earlier, it is within the province and expertise of the trial court to assess reasonableness of attorney's fees. Especially in certain contexts, such as in litigation seeking to enforce "an important right affecting the public interest," there is no question that degree of success is a "crucial factor" for that determination. (*EPIC III, supra*, at pp. 225, fn. 2, 238.) Indeed, we find no indication that "degree of success" may not be considered, alongside other appropriate factors, in determining reasonable attorney's fees in other contexts, including under Civil Code section 5975. "To the extent a trial court is concerned that a particular award

---

[15] The test articulated in *EPIC III* comes from a line of state court cases that refer to the approach set by the United States Supreme Court in *Hensley*, *supra*, 461 U.S. at p. 434.

23

is excessive, it has broad discretion to adjust the fee downward." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1138.)

It does not follow from these generalizations, or from the record the Carsons have provided, that the trial court committed a manifest abuse of discretion by awarding the full attorney's fees sought. Though the order granting Almanor's motion for attorney's fees is silent as to the court's reasoning, the moving papers and declarations of each side, as well as the hearing transcript, reflect that the court thoroughly considered the briefing and argument of the parties.[16] Also, the Carsons did not request a statement of decision with regard to the fee award. Under this circumstance, " ' "[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' " (*Ketchum, supra*, at p. 1140 [quoting *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564].)

Although the court in its discretion could have reduced the amount of the award to reflect the incomplete success of Almanor's action, as in *Monroy*, *supra*, 215 Cal.App.4th at pp. 1005–1006, there are ample factors to support the trial court's decision. Almanor prevailed on only a minor subset of the fines that formed the basis for the monetary award requested, but that subset was sufficient to satisfy the statutory criteria of an action to enforce the governing documents. (Civ. Code, § 5975(c).) In practical effect,

---

[16] The court's comments during the hearing on the motions for attorney's fees at one point seem to indicate that the court did not believe that it could take into account the degree of success at trial. In a colloquy with counsel for Almanor, the court asked: "[O]nce the Court makes a determination of prevailing party, the only discretion the Court has with respect to the fee award is reasonableness of them, and that is not a function of how well they did at trial. There's a threshold question, who's the prevailing party, and then the next question, which is, are the fees reasonable?" We do not find this comment determinative because it reflects only part of an extended discussion at hearing, not the court's final reasoning, after it heard from counsel for the Carsons and took the motions under submission. Even if the court had ascertained that it could consider degree of success, there were enough factors, as we have discussed, to support a full fees award.

Almanor's limited success established a baseline from which it can continue to adopt and enforce reasonable use restrictions under the CC&Rs. Unlike the important goals of the sex discrimination civil rights lawsuit that the appellants failed to obtain in *Sokolow* the objectives that Almanor failed to attain were primarily monetary. With respect to the time spent on the successful and unsuccessful aspects of Almanor's suit (*EPIC III, supra,* 190 Cal.App.4th at p. 239), we note that the various fines do not represent different causes of action or legal theories dependent on different facts, but different instances of attempted enforcement based on the CC&Rs and a shared set of facts. Almanor's fees, as established in their moving papers and supporting declarations, also accounted for its defense against the Carsons' cross-complaint, which included the Carsons' use of testifying expert witnesses. For these reasons, we do not find that the award of attorney's fees, compared to the "overall relief obtained" by Almanor, was so disproportionate as to constitute an abuse of discretion. (*Ibid.*)

## III.  DISPOSITION

The judgment on the Carsons' cross-complaint, and the award of attorney's fees and costs to Almanor, are affirmed. Respondent is entitled to its costs on appeal.

25

_____

Grover, J.

**WE CONCUR:**


_____

Rushing, P.J.


_____

Márquez, J.


*Almanor Lakeside Villas Owners Association v James Carson et al.*
**H041030**

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1~()~12-CV-230676 |
| Trial Judge: | Hon. Aaron Persky |
| Counsel for Plaintiff/Respondent<br>Almanor Lakeside Villas Owners<br>Association | Richard C. Raines<br>Gagen, McCoy, McMahon, Koss, et al. |
| Counsel for Defendants/Appellants<br>James Carson, et al. | Matthew David Mellen<br>Sarah Adelaars<br>Mellen Law Firm |