Filed 9/12/16  Zhang v. Fan CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ZINSHU ZHANG, | B268277 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YC069507) |
| v. | |
| JING FAN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Affirmed.

Jinshu Zhang, in pro. per., for Plaintiff and Appellant.

David S. Miller and F. Stephen Jones, for Defendants and Respondents Jing Fan and Home Times Group, Inc.

_____

After Jinshu Zhang and his wife discovered the newly-constructed townhome they had purchased did not contain the window design elements they wanted, Zhang sued his real estate agent for breach of contract. Following a bench trial, the trial court found the couple had not identified those architectural elements as being material to their purchase decision and thus no breach had occurred. On appeal Zhang contends the trial court erroneously focused on a real estate agent's standard of care under Civil Code section 2079.2 and did not consider whether the agent's conduct otherwise amounted to a breach of fiduciary duty. He also contends the court erred in concluding he had not suffered any damages. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Real Estate Purchase*

In May 2013 Zhang and his wife, Yuan Fu, hired Jing Fan as their real estate agent. Fan worked with real estate broker Home Times Group, Inc. In June 2013 Zhang, Fu and Fan visited "THREE SIXTY at Southbay," a new housing development under construction in Hawthorne. After touring four different model homes, Zhang and Fu agreed on the "The Townes Two" floor plan, a three-level townhome that included three bedrooms and a den. The model with this floor plan had an arched window in the den and a floor-to-ceiling window in the master bedroom. Zhang and Fu wanted to purchase the model they had seen, but it was not for sale.

Zhang and Fu decided to purchase Lot 320, an improved lot scheduled to be built out with a townhome using The Townes Two floor plan. With Fan's assistance, Fu signed an agreement with the developer to purchase Lot 320 for $609,990. Paragraph 5.4 of the joint purchase and escrow instructions provided that the buyer acknowledges "[t]he Property will not necessarily conform with any model. The exterior elevations, architectural treatments, floor plans and colors are shown on the master plot plans on display at the office of the Seller, which may be different than those displayed in the models. Additionally, window locations, window types, . . . vary by elevation and lot

2

location, and not all of such features displayed in the models may be included in the property." Fan testified she made similar disclosures to Fu and Zhang.

2. *Property Inspections Prior to Escrow Closing*

In November 2013 Fu went on two walk-throughs to inspect the new home. The seller's agent, Jasun Donaldson, accompanied her. Fan was not present. The newly constructed home had the same floor plan as the model Fu and Zhang liked, but it did not have an arched window in the den or a floor-to-ceiling window in the master bedroom. Fu identified several items during her final inspection she claimed needed attention, but she did not identify the windows or any exterior design elements. After escrow closed, Zhang and Fu visited the property to measure for window treatments and realized the windows and some exterior design elements were different from the style of the model the couple had toured.

3. *This Lawsuit*

Zhang, a lawyer representing himself, sued Fan and Home Times Group in a complaint that stated a single cause of action for breach of oral contract.[1] Zhang alleged he and Fu told Fan they wanted a home "identical" to the model they liked and Fan had breached their oral agency agreement by failing to ensure the townhome they purchased contained all of the architectural elements of that model. Zhang also averred, due to the differences in design elements in the properties, the fair market value of the home they purchased was less than the fair market value of the home they liked and had intended to purchase.

---

[1] Although Zhang did not sign any contract with Fan and was not listed as the purchaser on the original deed, Fu assigned her contract rights and quitclaimed the property to Zhang. Zhang also alleged he was a party to the couple's oral agreement with Fan.

3

4. *The Bench Trial*

a. *Fu and Zhang's testimony*

Fu testified the arched window in the den was an extremely important design element to her because the window's curve was good *feng shui,* "good luck" in the Chinese culture. For that and other reasons, Fu specifically told Fan she wanted a townhome that was identical to the model home she and Zhang liked. Fu believed Fan understood these requirements.

Fan did not accompany Fu during her home inspections, having told Fu she had other commitments. During those inspections Fu looked out the windows but did not notice their shape and did not observe the exterior. She explained it had been raining on both occasions and she did not want to spend time outside. Fu also testified Donaldson had led her in and out of the home through the back door during the inspections, depriving her of the opportunity to notice the front exterior. Donaldson disputed this account, testifying Fu had come in and out through the front door and had ample opportunity to, and did, view the home's exterior.

Zhang testified, consistently with his wife, that he and Fu had specifically told Fan they wanted a house identical to the model they had viewed. In his mind, that meant one that looked exactly like the model's exterior. Zhang did not recall reading paragraph 5.4 of the joint purchase and escrow instructions, which explained that design elements could vary from the models and would be reflected in the plot maps in the sales office; nor did Fan tell him that could be the case. Zhang asserted he and his wife should have been sold Lot 317, which contained the design elements they liked and believed they had purchased.

b. *Fan's testimony*

Fan testified that, after visiting four different models, Zhang and Fu agreed on The Townes Two floor plan. After reviewing the plot maps in the sales office, they decided on Lot 320. (No evidence was presented as to what exterior style was depicted in the plot maps Fu and Zhang reviewed for the Lot 320 townhome.) Fan explained that

4

Lot 317, the model with the arched and floor-to-ceiling windows, had not been released for sale in June 2013 and was not available for purchase at that time. Fan was adamant that neither Zhang nor Fu told her the shape of the windows was a critical factor in their purchase decision. Had they done so, Fan insisted, she would most certainly have included it in the purchase agreement. Fan did not attend the walk-through inspections with Fu in November 2013 because Fu had asked her not to go to the first and Fu did not tell her about the second. Fan recalled Fu telling her that Zhang "was a great lawyer" and she did not need Fan's help. Fan inspected the property many times, including conducting her own final walk-through before the close of escrow. Although she noticed the property had windows that were shaped differently from those in the model, Fan did not discuss that with Fu or Zhang because she did not know it was material to the couple's purchase decision.

     5. *The Trial Court's Statement of Decision*

The court ruled no breach of contract had occurred. The court found Fu and Zhang's testimony not credible, noting Fu had several opportunities prior to closing to identify the discrepancy between the windows in the model and the windows in Lot 320. The court also believed Fan's testimony that, if Zhang and Fu had disclosed the importance to them of the window design, she would have included that item in the joint purchase agreement and escrow instructions and ensured the townhome they purchased possessed those design details.

The court also addressed whether Fan's conduct fell below the standard of care for real estate brokers set forth in Civil Code section 2079.2[2] and, if so, whether she and Home Times Group breached an implied duty inherent in the contract. The court found there had been no breach of any implied duty of care. The court credited Fan's testimony

---

[2]    Civil Code section 2079.2 provides in part: "The standard of care owed by a broker under this article is the degree of care that a reasonably prudent real estate licensee would exercise and is measured by the degree of knowledge through education, experience, and examination, required to obtain a license under Division 4 (commencing with Section 10000) of the Business and Professions Code."

that she had inspected the property as required and disclosed to Zhang and Fu all information material to the price of the townhome and to those matters Zhang and Fu had identified as being material to their purchase decision. Finally, the court found Zhang had failed to prove any damages. Although there was evidence that Lot 317 sold for $10,000 more than Zhang and Fu's unit, Fan had explained the two units were not released for sale at the same time. Fan testified the price differential was not based on an appraisal or any actual difference in the value of the home, but reflected the developer's decision to increase the cost by $10,000 for each successive release of property. No evidence was presented as to the appraised fair market value of Zhang's home compared to a home with the design elements his lacked.

## DISCUSSION

Zhang urges us to reverse the judgment because the trial court used the wrong legal standard. Rather than simply determining whether Fan had breached a material express or implied term of their oral agreement, Zhang contends the trial court should have determined whether Fan's failure to advise Fu of the different design elements on the townhome's windows and exterior constituted a breach of her and/or Home Times Group's fiduciary duty.

Zhang's argument is both procedurally and substantively flawed. The operative second amended complaint asserted only a cause of action for breach of contract and did not plead any breach of fiduciary duty by Fan or Home Times Group. Although Zhang claimed in his written closing argument that Fan and Home Times Group's conduct amounted to a breach of fiduciary duty, he did not seek to amend his complaint according to proof to state that cause of action (cf. *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258 ["if a plaintiff wishes to expand the issues presented, it is incumbent on the plaintiff to seek leave to amend the complaint"]; *Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1069, fn. 7 ["""'in the absence of some request for amendment there is no occasion [for court] to inquire about possible issues not raised by the pleading'"""]) or file an objection to the court's statement of

6

decision, which did not address that unasserted claim (Code of Civ. Proc., § 634). Any fault with respect to the omission of a discussion of Fan and Home Times Group's fiduciary responsibilities to their clients lies with Zhang alone, not the trial court. Zhang has forfeited that issue. (See *Colony Ins. Co. v. Crusader Ins. Co.* (2010) 188 Cal.App.4th 743, 751 ["'[i]t is a firmly entrenched principle of appellate practice that litigants must adhere to the theory on which a case was tried'"]; *Adoption of Mathew B.* (1991) 232 Cal.App.3d 1239, 1259 [court's failure to address issue in statement of decision was explained by party's failure to raise it; it was improper to raise it for first time on appeal].)

Zhang's argument also fails on its merits. The court's finding that Zhang and Fu had not identified the exterior elevations, including the window design, as material to their purchase decision necessarily precluded a ruling that the failure to bring those design items to their attention was a breach of Fan's or Home Times Group's fiduciary duty. (See *Field v. Century 21 Klowden-Forness Realty* (1998) 63 Cal.App.4th 18, 26 [broker's fiduciary duty to client includes a duty to disclose to the client reasonably obtainable information on "matters that will affect the principal's decision"]; *Michel v. Moore & Associates, Inc.* (2007) 156 Cal.App.4th 756, 762 [a real estate agent, as a fiduciary, must "tell its principal of all information it possesses that is material to the principal's interests"; this duty is "greater than the negligence standard of care under section 2079"].)

Finally, to the extent Zhang challenges the court's determination that he failed to prove Fan, and by extension, Home Times Group, breached an express or implied contract, this, too, fails.[3] Zhang devotes several pages of his appellate brief to summarizing testimony favorable to him and insists Fan perjured herself on the stand.

---

[3] On appeal from a determination of failure of proof at trial, the question for the reviewing court is "'"whether the evidence compels a finding in favor of the appellant as a matter of law."'" (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769; accord, *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1157; *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)

However, the trial court is the arbiter of credibility; and it believed Fan, not Fu or Zhang. Fan testified Zhang and Fu identified several items that were material to them, including the budget and the floor plan. The trial court found Fan credible and believed, if the window design were particularly important, Fu would have disclosed it to Fan in the beginning of the home search or, at the very least, identified it as problematic following her visual inspections of the property. Zhang's lengthy recitations of favorable testimony are simply a misguided effort to reargue the evidence on appeal. (See *People v. Thompson* (2010) 49 Cal.4th 79, 125 ["[w]e reject defendant's attempt to reargue the evidence on appeal and reiterate that 'it is not a proper appellate function to reassess the credibility of witnesses'"]; *Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 398-399 [Ford's "attempt to reargue on appeal those factual issues decided adversely to it at the trial level [is] contrary to established precepts of appellate review"]; *San Diego Gas & Electric Co. v. Schmidt* (2014) 228 Cal.App.4th 1280, 1282 [same].)[4] He has not shown the evidence at trial compelled a finding in his favor as a matter of law. (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769.)

## DISPOSITION

The judgment is affirmed. Fan and Home Times Group, Inc. are to recover their costs on appeal.

PERLUSS, P. J.

We concur:

ZELON, J.                    GARNETT, J.[*]

---

[4] Zhang alternatively argues the trial court erred in concluding he failed to prove that he had suffered any damages. At a minimum, he argues, he is entitled to a refund of the commission Fan and Home Times Group received in connection with the purchase. In light of our holding that Zhang failed to prove any breach of contract, we do not address this issue.

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.