Filed 1/11/24  In re Alberto C. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re Alberto C. et al., Persons Coming Under the Juvenile Court Law. | B326669 |
| | (Los Angeles County Super. Ct. No. 17CCJP00799C-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| LORI C. et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge.  Conditionally affirmed and remanded with directions.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant Lori C.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant Saul C.

Dawyn Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

## INTRODUCTION

Lori C., the mother of Alberto C. (born March 2008) and Isaiah C. (born August 2013), appeals from the juvenile court's orders denying her Welfare and Institutions Code[1] section 388 petition for modification as to both children and terminating her parental rights as to Isaiah under section 366.26. Lori contends the court abused its discretion by denying her section 388 request because she established a change in circumstances supporting continued reunification services with both children, and there is substantial evidence she established the beneficial parental relationship exception to the termination of her parental rights as to Isaiah. (§ 366.26, subd. (c)(1)(B)(i).)

Saul C., the father of Alberto and Isaiah, appeals from the juvenile court's orders denying his section 388 request as to Isaiah, terminating his parental rights as to Isaiah, and granting legal guardianship of Alberto to his paternal aunt with monitored

---

[1] Statutory references are to the Welfare and Institutions Code.

2

visits for Saul. However, the only claim of error Saul advances in his opening brief is that remand is necessary to comply with the Indian Child Welfare Act of 1978 (ICWA).[2] (25 U.S.C. § 1901 et seq.) Lori joins in Saul's ICWA arguments. In Saul's previous appeal of the juvenile court's jurisdiction and disposition findings, this court affirmed those findings and orders in a nonpublished order, but remanded for the sole purpose of ensuring compliance with the inquiry and notice provisions of ICWA. (*Los Angeles County Department of Children and Family Services v. Saul C.* (Aug. 12, 2022, B313369) [nonpub. order].)

The parties agree the record reflects no investigation of Indian ancestry in compliance with ICWA and this court's order and agree remand for an ICWA inquiry is appropriate. We reject

---

[2] Saul otherwise purports to join in Lori's brief. Lori's brief does not make any particularized argument regarding Saul's legal rights as they relate to Isaiah or Alberto. Under these circumstances, we deem Saul to have joined in Lori's arguments relating to Lori's legal rights, and only address Saul's ICWA argument. (See *In re Michael V.* (2016) 3 Cal.App.5th 225, 229, fn. 3 [solely addressing ICWA argument where mother's notice of appeal identified order terminating parental rights and the order denying her section 388 petition, but her opening brief challenged the ICWA ruling only as it relates to the termination order]; *Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 ["[o]n appeal we need address only the points adequately raised by plaintiff in his opening brief on appeal"].) We deem Saul's unbriefed issues as forfeited. (See *Tellez,* at p. 1066 ["When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited."]; Rules of Court, rule 8.204(a)(1)(B) [appellate brief must support each point by argument and citation of authority].)

Lori's arguments in all other respects. Accordingly, we conditionally affirm the orders and remand the matter to allow the Department of Children and Family Services (Department) and the juvenile court to conduct a meaningful ICWA inquiry in accordance with the inquiry and notice requirements of federal and California law consistent with our prior order.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Dependency Proceedings Involving Alberto and Isaiah*

The Department filed the underlying section 300 petition in this case in March 2021. The petition alleged Isaiah and Alberto were at risk of serious physical harm or illness due to: Lori's and Saul's substance abuse and each parent's failure to protect; Saul's mental health diagnosis of paranoid schizophrenia, his failure to take medication, and Lori's failure to protect from Saul; Isaiah being in Saul's home with a paternal uncle involved in ongoing criminal activity and substance abuse; and the parents' failure to ensure treatment for the children's mental health and developmental issues (including autism for Isaiah, and depression, PTSD, and ADHD for Alberto). (§ 300, subds. (b), (c) & (j).)[3] The children were detained from both parents and placed with their paternal aunt Carolina, with separate monitored visits.[4]

---

[3]    In 2022 the Legislature amended section 300 (Stats. 2022, ch. 832, § 1), effective January 1, 2023, but the changes do not affect our analysis.

[4]    A prior section 300 petition was sustained in January 2018 based on Lori's physical abuse of Alberto, Lori's boyfriend's

4

In June 2021 the juvenile court dismissed the subdivision (c) (emotional abuse) allegations and sustained a substantially similar amended petition, removed the children from the care and custody of their parents, ordered them placed under the supervision of the Department, and directed the Department to provide family reunification services to Lori and Saul.  Saul appealed, and we conditionally affirmed the jurisdiction findings and disposition order in a nonpublished stipulated order, with remand for the sole purpose of conducting an ICWA inquiry.  (*Los Angeles County Department of Children and Family Services v. Saul C., supra,* B313369 [nonpub. order].)

At the six-month review hearing (§ 366.21, subd. (f)) in December 2021, the Department reported the children were comfortable and bonded with Carolina and were receiving therapy and appropriate services.  The children reported they felt safe in Carolina's home.  The Department further reported Lori failed to report for three drug tests in August 2021 and refused to enroll in drug treatment even after ordered by the court in September 2021.  Lori also did not enroll in any services and canceled four visits with the children.  Visit monitors reported Lori had "fair" interactions with the children and became more engaged with them over time, and that Saul interacted well with

---

physical abuse of Alberto and Lori's failure to protect, and Lori and Saul's substance abuse.  In conjunction with that case, both children were detained from the parents in September 2017 and placed with Carolina.  The children were returned to Lori's care in January 2019 with family maintenance and family preservation services.  The juvenile court granted Lori sole physical custody, joint legal custody, and monitored visits for Saul in February 2020.

the children.  The juvenile court ruled that Saul was in partial compliance with his case plan and that Lori had not made any substantial progress.  It continued reunification services for an additional six months.

At the 12-month review hearing in June 2022, the Department reported Lori had canceled several home visits.  Lori had also canceled more than six visits with the children, and of those she attended she regularly ended her visits early.  Lori had 10 negative drug tests and failed to report to 13 drug tests.  Lori enrolled in services in March 2022 but as of May 17 had not attended.  Monitors reported Lori favored Alberto during visits.  Lori and the children reported visits were positive, and Carolina reported Isaiah cried when Lori canceled visits.  The juvenile court also reviewed Saul's section 730 psychological evaluation report and stated "even if I were not concerned by the 730 evaluation, and I am. . . . Alberto in particular has noted he does not feel safe.  And it is something that I cannot overlook. . . . I hear dad's response to be that he doesn't agree.  And he wants his kids back, which I cannot do today.  But, in the alternative, he wants more time to comply with mental health services that by his counsel's own statement he has no intent of complying with."

Based on this information, the juvenile court found an overall substantial lack of progress with the court-ordered case plan.  The court terminated the parents' reunification services as to both children and set a section 366.26 hearing for October 11, 2022, which was continued to January 30, 2023 and then to February 15, 2023.

On September 2022 Saul filed a writ petition in pro per challenging the juvenile court's June 2022 orders as to the children, which this court dismissed pursuant to *Cresse S. v.*

6

*Superior Court* (1996) 50 Cal.App.4th 947, and Rules of Court, rule 8.452(a) and (b).  (*Ex rel. Los Angeles County Department of Children and Family Services v. Saul C.* (Oct. 4, 2022, B321515) [docket].)

In December 2022 the juvenile court held a permanency planning hearing.  Alberto had previously stated he did not want to be adopted.  At the hearing, the court identified legal guardianship with Carolina as Alberto's permanent plan, and adoption with Carolina as Isaiah's permanent plan, over both parents' objection.

B.      *The Section 388 Modification Requests as to Both Children*

In October 2022 Lori filed a modification request pursuant to section 388 seeking Alberto and Isaiah's return to her or, alternatively, additional family reunification services.  She declared she completed her case plan, including two drug treatment programs, 22 parent education classes, and 20 individual counseling sessions.  She further reported having consistently tested negative for drugs, that she saw her psychiatrist regularly, and was taking prescribed medication.  But a letter from her substance abuse education program stated Lori had not completed the program.  Lori argued a change of order would be in the children's best interest because she was committed to resolving the underlying issues that led to their removal and sought to be involved as their mother.

On January 30, 2023 the juvenile court heard Lori's section 388 request.  The Department and counsel for the children jointly recommended Lori's request be denied.  Lori's counsel argued her issues with compliance and canceled visits were due to a medical condition (endometriosis), for which she

7

was treated in October 2022. The court denied the request, finding no changed circumstances. The court observed that Lori had made efforts towards completing her case plan, but her compliance was incomplete and her circumstances were not yet sufficiently changed. The court stated it did not need to reach the best interest of the child prong, but even if it did, it was not inclined to find change was in the children's best interest given Lori's past visitation record with her children.

On January 27, 2023 Saul filed section 388 modification requests seeking return of Isaiah to his care or alternatively shared custody with Carolina, reinstatement of family reunification services, and liberalized, unmonitored visitation with both children.[5] On February 15, 2023 the juvenile court heard argument on and denied Saul's section 388 requests.

---

[5] The record reflects Saul filed two additional section 388 modification requests, which are not the subject of this appeal. On February 14, 2023 Saul filed an amended section 388 modification request seeking reinstatement of family reunification or liberalized unmonitored visits as to both boys, and alleging he completed a drug abuse treatment program, individual and family counseling and parenting classes, and had been sober for six months. On March 1, 2023 Saul filed additional section 388 modification requests seeking the boys' return or six months of family reunification services. Saul alleged "massive improvement to be on everyone's level socially to collaboration with any other individual at institutional level. The mental health issue is a [sic] constructed by DCFS to prevent me and kids." As noted above, in this case Saul filed a notice of appeal from the juvenile court's February 15, 2023 order denying his January 27 section 388 petition, but advances no legal argument in support.

C.  *The Section 366.26 Hearing Terminating Parental Rights*
*As to Isaiah, and Placing Alberto in Legal Guardianship*

The section 366.26 hearing commenced February 15, 2023, with testimony from Lori and Saul. The court directed the parties to submit their closing arguments in writing. Each parent argued the parental benefit exception to termination of parental rights applied.

On March 3 the juvenile court found Isaiah was adoptable, and that Lori had not visited him regularly. As to the first prong of the parental benefit exception, regular visitation and contact, the court noted that while Carolina had cancelled some visits, Lori had cancelled more visits (11 visits) and had not availed herself of virtual visits when medical issues made travel difficult. Lori had canceled visits the day of or asked for visits to end early, including as recently as December 22. As to the second prong of the exception, positive emotional attachment, the court found Isaiah and Lori had friendly engagement during certain visits but no engagement during others when Lori spent more time with Alberto. The court stated it could not find that Isaiah had a substantial positive emotional attachment to Lori, noting Lori's testimony lacked specificity about his emotional response to her visits. As to the third prong, detriment to the child even when balanced against the benefits of a new adoptive home, the court found that the parents had not provided evidence of detriment to Isaiah if parental rights were terminated. Accordingly, the court terminated Lori's and Saul's parental rights as to Isaiah.

As to Alberto, the court found legal guardianship was an appropriate plan. The court found Alberto was adoptable and that removal from Carolina would be detrimental to his emotional wellbeing, and terminated jurisdiction as to Alberto.

Carolina agreed to provide permanency for Alberto and Isaiah under their respective plans. The court ordered each parent's visitation to remain monitored and occur three times per week for three hours per visit.

Lori appealed from the juvenile court's January 30, 2023 order denying her section 388 petition and March 3, 2023 order terminating her parental rights as to Isaiah. She did not appeal from the order granting legal guardianship of Alberto to Carolina. Saul appealed from the juvenile court's February 15, 2023 order denying his section 388 petition and March 3, 2023 orders terminating his parental rights to Isaiah and granting Carolina legal guardianship of Alberto with monitored visits for him.

## DISCUSSION

A.    *Governing Law and Standard of Review*
    1.    *Section 388 modification of juvenile court orders*
    "Section 388 provides for modification of juvenile court orders when the moving party (1) presents new evidence or a change of circumstance and (2) demonstrates modification of the previous order is in the child's best interest." (*In re Matthew M.* (2023) 88 Cal.App.5th 1186, 1194, citing *In re Jasmon O.* (1994) 8 Cal.4th 398, 415; accord, *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Malick T.* (2022) 73 Cal.App.5th 1109, 1122; see Rules of Court, rule 5.570(e); see also *In re Zacharia D.* (1993) 6 Cal.4th 435, 455 ["'[s]ection 388 provides the "escape mechanism" that . . . must be built into the process to allow the court to consider new information"].) "'The petitioner has the burden of showing by a preponderance of the evidence (1) that

10

there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.' [Citation.] '[T]he change in circumstances must be substantial.'" (*In re J.M.* (2020) 50 Cal.App.5th 833, 845; accord, *In re Malick T.,* at p. 1122.)

"If the juvenile court has ruled the moving party failed to carry his or her initial burden to demonstrate new evidence or change of circumstance, the first step of the analysis, the question for the reviewing court is whether that finding is erroneous as a matter of law." (*In re Matthew M., supra,* 88 Cal.App.5th at p. 1194; see *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769 [where the issue on appeal turns on a failure of proof at trial, "the question for the reviewing court [becomes] '"whether the evidence compels a finding in favor of the appellant as a matter of law"'"]; *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1156 [same]; see also *In re R.V.* (2015) 61 Cal.4th 181, 201 [where a party fails to carry its burden on an issue in the juvenile court, "the inquiry on appeal is whether the weight and character of the evidence . . . was such that the juvenile court could not reasonably reject it"].)

"We review the court's best interest determination, the second step, for abuse of discretion and may disturb the exercise of that discretion only in the rare case when the court has made an arbitrary or irrational determination." (*In re Matthew M., supra,* 88 Cal.App.5th at pp. 1194-1195; see *In re Stephanie M., supra,* 7 Cal.4th at p. 318; *In re I.B.* (2020) 53 Cal.App.5th 133.) "We do not inquire whether substantial evidence would have supported a different order, nor do we reweigh the evidence and substitute our judgment for that of the juvenile court. [Citation.]

11

We ask only whether the juvenile court abused its discretion with respect to the order it made." (*In re Matthew M.,* at p. 1195.)

2. *Section 366.26 Selection and Implementation Hearing*

The express purpose of a section 366.26 selection and implementation hearing is "to provide stable, permanent homes" for dependent children. (§ 366.26, subd. (b).) "If the court has decided to end parent-child reunification services, the legislative preference is for adoption." (*In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 780; accord, *In re S.B.* (2009) 46 Cal.4th 529, 532 ["[i]f adoption is likely, the court is required to terminate parental rights, unless specified circumstances compel a finding that termination would be detrimental to the child"]; *In re Celine R.* (2003) 31 Cal.4th 45, 53 ["if the child is adoptable . . . adoption is the norm"]; see *In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [state has a "compelling" interest in "providing stable, permanent homes for children who have been removed from parental custody" and reunification efforts have been unsuccessful].)

"When the court finds by clear and convincing evidence the child is likely to be adopted, the statute mandates judicial termination of parental rights unless the parent opposing termination can demonstrate one of six enumerated exceptions applies." (*In re Elizabeth M., supra,* 19 Cal.App.5th at pp. 780-781; § 366.26, subd. (c)(1)(B); see *In re Celine R., supra,* 31 Cal.4th at p. 53 ["court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a compelling reason for finding that termination of parental rights would be detrimental to the child"]; *In re Matthew C.* (1993) 6 Cal.4th 386, 392 [decision to

terminate parental rights at § 366.26 hearing "'"will be relatively automatic if the minor is going to be adopted"'"'].)

The beneficial parental relationship exception to termination permits the court to order a permanent plan other than adoption if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) As our Supreme Court explained in *In re Caden C.* (2021) 11 Cal.5th 614, the exception requires the parent to establish, by a preponderance of the evidence, (1) the parent has maintained regular visitation and contact with the child, "taking into account the extent of visitation permitted"; (2) the child has a substantial, positive, emotional attachment to the parent such that the child would benefit from continuing the relationship; and (3) terminating the relationship "would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Id.* at p. 636; see *id.* at p. 630 ["the exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child"].) "'If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that,' even considering the benefits of a new adoptive home, termination would 'harm[ ]' the child, the court should not terminate parental rights." (*Id.* at p. 633.)

We review the juvenile court's findings as to whether the parent has maintained regular visitation and contact with the child and the existence of a beneficial parental relationship for substantial evidence. (*In re Caden C., supra,* 11 Cal.5th at

13

pp. 639-640; cf. *In re R.V., supra,* 61 Cal.4th at pp. 200-201 ["[t]here is, however, no single formulation of the substantial evidence test for all its applications;" where a party fails to meet its burden on an issue in the juvenile court, "the inquiry on appeal is whether the weight and character of the evidence . . . was such that the juvenile court could not reasonably reject it"].) We review the third step—whether termination of parental rights would be detrimental to the child due to the child's relationship with his or her parent—for abuse of discretion. (*In re Caden C.,* at p. 640.)

B.    *The Juvenile Court Did Not Err by Denying Lori's Section 388 Requests Based on Changed Circumstances*

For a change of circumstances to require modification of a juvenile court's order under section 388 as a matter of law, "[t]he change in circumstances . . . must be of such significant nature that it requires a setting aside or modification of the challenged order." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) "'Not every change in circumstance can justify modification of a prior order'" under section 388. (*In re N.F.* (2021) 68 Cal.App.5th 112, 120; see *In re A.A.,* at p. 612.) "''[T]he change in circumstances must be substantial.''" (*In re Malick T., supra,* 73 Cal.App.5th at p. 1122; accord, *In re I.B., supra,* 53 Cal.App.5th at p. 152; see *In re J.M., supra,* 50 Cal.App.5th at p. 845.) "[A] section 388 petition seeking reinstatement of reunification services or return of the child will necessarily involve a parent who has made mistakes sufficient to support termination of services at some point in the past. The question must be whether the changes the parent made since then are substantial enough to overshadow that prior

14

determination, such that reunification is now in the child's best interests." (*In re J.M., supra,* 50 Cal.App.5th at p. 848.)

In evaluating whether the petitioner met her initial burden to show changed circumstances by a preponderance of the evidence, the juvenile court "should consider (1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re A.A., supra,* 203 Cal.App.4th at p. 612; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532.)

Here, Lori presented no substantial change of circumstances to justify modification of the juvenile court's orders. In assessing the seriousness of the problem that led to dependency of the children, the juvenile court expressly found that Lori had: a history of substance abuse, including methamphetamine and opiates; failed to protect the children from Saul, who has a history of mental health and substance abuse; and had not ensured the children received consistent mental health treatment. The court further found Lori was resistant to services and drug treatment for many months, even under court order, and repeatedly missed drug tests. Lori's section 388 petition alleged she completed various services and programs, but on appeal Lori concedes she "had not fully ameliorated the issues that brought the children under dependency court jurisdiction." Instead Lori argues, she substantially complied with her case plan, received treatment for her medical condition that impacted her ability to comply with the case plan, and she was committed to fulfilling the court's

requirements. While this progress is laudable, however, the record before the juvenile court reflects that Lori had not completed substance abuse treatment, and only attended the substance abuse education course in part. This is so despite longstanding substance abuse issues and averring in her section 388 petition that she completed two treatment programs. Indeed, Lori was not participating in any ongoing treatment or other court-ordered services after October 2022 beyond taking medication.

Accordingly, Lori failed to demonstrate materially changed circumstances which would justify a modification, and the juvenile court did not abuse its discretion by denying her section 388 request for modification of the disposition order.

Lori further argues she had a strong bond with Isaiah, which is relevant to whether it would be in Isaiah's best interest to change the court order. We need not assess whether modification would be in the child's best interest, however, because Lori has not demonstrated changed circumstances which are the predicate to a successful section 388 petition.

C.     *The Juvenile Court Did Not Abuse Its Discretion in Concluding Lori Failed To Establish the Parental Relationship Exception to Adoption with Regard to Isaiah*

As noted above, it was Lori's burden to establish all three elements required for the parental relationship exception to apply in this case. (See § 366.26, subd. (c)(1)(B)(i); *In re Caden C., supra,* 11 Cal.5th at p. 636.) The trial court did not abuse its discretion in finding Lori did not meet her burden.

1. *Regular Visitation and Contact*

As the juvenile court observed at the section 366.26 hearing, Lori's visitation was inconsistent for much of the dependency proceedings.  The court's evaluation of visitation for purposes of the parental relationship exception considers the entire time the children have been removed from parental custody, not simply the period immediately before the hearing at which termination of parental rights is at issue.  (See *In re C.F.* (2011) 193 Cal.App.4th 549, 554 ["Sara was more consistent with visitation as the section 366.26 hearing neared, but we agree with the Agency's assessment that overall her visitation was sporadic.  Sporadic visitation is insufficient to satisfy the first prong of the parent-child relationship exception to adoption."]; see also *In re J.C.* (2014) 226 Cal.App.4th 503, 531 [considering lapses in visitation that had occurred prior to the last six weeks of dependency as supporting the finding there was not regular visitation and contact].)

Here, Lori missed 10 or more scheduled visits and often canceled the day of the visit.  She also ended her visits early.  After the children were detained, Lori began monitored visits once per week for three hours.  She canceled four visits between June and November 2021.  During the second six-month review period, Lori's visits were for two hours once per week, and she canceled at least six visits between December 2021 and June 2022.  Two other visits were mutually canceled by Lori and others, and others canceled three visits.  The social worker noted that Lori canceled additional visits that were not recorded, as she canceled at the last minute or ended visits early.  In October 2022, Lori had monitored visits once per week for one or two hours.  In December 2022, the Department assessed her

17

visitation as "consistently inconsistent." The social worker planned to observe a visit on November 22, 2022 unannounced, but was unable to do so because Lori ended the visit after only 30 minutes.

Given the evidence of Lori repeatedly canceling and shortening her once-weekly visits, the juvenile court did not abuse its discretion in finding Lori did not establish the regular visitation prong.

### 2.    *Beneficial Relationship*

The second prong of the parental relationship exception has two components:  (a) the child has a positive emotional attachment to the parent, and (b) the child would benefit from continuing the relationship.  (See *In re Caden C., supra,* 11 Cal.5th at p. 636.)  Isaiah exhibited some affectionate behavior toward Lori at visits (hugging, running toward her, holding her hand) that indicated a positive relationship between them, and visitation monitoring reports indicated Lori became more engaged with both children over time.  In October 2022 Isaiah reported visits were going "okay."

Even assuming a positive emotional attachment, however, the record contains insufficient evidence to support a finding Isaiah would benefit from continuing that relationship.  (See *In re Caden C., supra,* 11 Cal.5th at p. 632 [whether "'the child would benefit from continuing the relationship'" with his or her parent is shaped by factors "such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs'"]; *In re Katherine J.* (2022) 75 Cal.App.5th 303, 317.)  Isaiah spent much of his life out of

18

Lori's custody:  he lived with Lori from his birth in August 2013 through September 2017, but then lived with Carolina from September 2017 through January 2019, and from March 2021 through the hearing.  Sometime in 2020 he began residing with his paternal grandmother during the week, spending only weekends with Lori.  In December 2022 Isaiah stated he wanted to live with Carolina and felt protected and cared for in her household.  Lori's counsel offered limited evidence to support a finding Isaiah benefited from visits with Lori, however pleasant they may have been, and the record also reflects negative effects of their interaction.  Carolina reported Isaiah cried when Lori cancelled visits.  Visitation monitors observed that Lori favored Alberto and had difficulties responding to Isaiah's emotional needs during their visits.  In September and December 2022 Carolina reported Lori continued to give Alberto more attention and to leave Isaiah by himself.  One day when Alberto did not attend the visit, Isaiah asked to leave after 30 minutes, and Lori agreed.

### 3.     *Detriment from Termination*

The final prong is whether the benefits of stability and permanence to Isaiah from adoption by paternal aunt Carolina was outweighed by the harm to Isaiah that would be caused by terminating his parental relationship with Lori.  As the Supreme Court in *In re Caden C.* cautioned, the legislative preference is adoption; the parental relationship exception, like the other exceptions to termination of parental rights, applies only in "'exceptional circumstances.'"  (*In re Caden C., supra,* 11 Cal.5th at p. 631; accord, *In re Celine R., supra,* 31 Cal.4th at p. 53.)  When the benefits of a stable, adoptive, permanent home

outweigh the harm the child would experience from the loss of a continued parent-child relationship, the court should order adoption. (*In re Caden C.,* at p. 634.)

Here, the juvenile court concluded there was no evidence in the record that Isaiah's relationship with Lori outweighed the benefits of consistency and stability in the adoptive home of his paternal aunt. At the time of termination of parental rights for Isaiah in March 2023, both siblings had been living with Carolina since March 2021; they had also been living with her between September 2017 and January 2019 when they were previously placed with Carolina in conjunction with a previous dependency proceeding. Isaiah and Alberto bonded with Carolina and reported they felt safe with her. The children had special behavioral and developmental needs, and Carolina worked as a pre-kindergarten teacher for children with special needs, supporting the juvenile court's conclusion she was well equipped to manage Isaiah's autism diagnosis, among other issues. Lori also could continue to visit with Alberto up to three times a week for three hours per visit, with Carolina having discretion to permit her to have continued contact with Isaiah.

Lori challenges the juvenile court's determination and argues a legal guardianship with regard to Isaiah would better serve his interests rather than adoption and termination of parental rights. Lori has not, however, demonstrated the court's finding was arbitrary or irrational. In light of the limited evidence before the juvenile court supporting application of the parental relationship exception, the court's decision was not an abuse of discretion.

20

D.    *Further Remand Is Appropriate To Ensure Compliance with ICWA*

On August 12, 2022 in Saul's previous appeal of the juvenile court's jurisdiction and disposition findings, this court conditionally affirmed the findings and orders at issue in that appeal but remanded for the sole purpose of ensuring compliance with the inquiry and notice provisions of ICWA (25 U.S.C. § 1901 et seq.).  (*Los Angeles County Department of Children and Family Services v. Saul C., supra,* B313369 [nonpub. order].)

The matter was remanded with directions for the Department to make all reasonable efforts to interview the children's paternal grandparents, aunts, and uncles; to identify and thereafter to interview all extended family members and others who have an interest in the children, including the maternal grandparents, regarding the children's possible Indian ancestry; and to submit a report of its interviews or efforts to conduct the interviews to the juvenile court.  (*Los Angeles County Department of Children and Family Services v. Saul C., supra,* B313369 [nonpub. order].)  As set forth in our prior order, if this inquiry gave the Department reason to believe Indian children may be involved, but the Department does not yet have sufficient information to determine if notice must be provided to a tribe or tribes, the Department must conduct a further inquiry, including contacting the Bureau of Indian Affairs, the California Department of Social Services, and any tribe that may potentially be interested in the proceeding to ascertain whether the children may be members or eligible for membership with a tribe.  (*Ibid*.)  At a noticed hearing, the juvenile court was to ensure that adequate inquiry and any necessary notice had been made, and then the court was directed to make ICWA findings regarding the

21

children.  (*Ibid*.)  If notice is required pursuant to ICWA and a tribe determines Alberto and Isaiah are Indian children, the juvenile court was to proceed in accordance with ICWA.  (*Ibid*.; see generally 25 U.S.C. § 1903(4); 25 C.F.R. § 23.107(a); Welf. & Inst. Code, §§ 224.1, 224.2; Rules of Court, rule 5.481(a) [describing inquiry and notice requirements when investigating and determining whether a dependent is an Indian child].)

The parties all agree the record does not reflect the Department or juvenile court took any action to comply with this order, and further remand for ICWA inquiry is appropriate.  We also agree and remand to the juvenile court to direct the Department to conduct the ICWA inquiry as specified in our August 12, 2022 order in *Los Angeles County Department of Children and Family Services v. Saul C., supra,* B313369 [nonpub. opn.].

## DISPOSITION

The juvenile court's section 388 orders of January 30, 2023 and February 15, 2023 are affirmed.  The section 366.26 orders of March 3, 2023 are conditionally affirmed.  We remand the matter for the juvenile court to direct the Department to conduct a meaningful ICWA inquiry and ensure compliance with ICWA and related California law notice requirements, in accordance with this court's August 12, 2022 order in *Los Angeles County Department of Children and Family Services v. Saul C., supra,* B313369 [nonpub. order], and for the Department to ensure compliance.

The juvenile court shall then determine whether the ICWA inquiry and notice requirements have been satisfied and whether

Isaiah and Alberto are Indian children.  If the court finds they are Indian children, it shall conduct a new section 366.26 hearing, as well as all further proceedings, in compliance with ICWA and related California law.  If not, the court's original section 366.26 order remains in effect.


                          MARTINEZ, J.

We concur:


        SEGAL, Acting P. J.


        FEUER, J.

23